BARBARA I. JOHNSTON, ESQ.
Nevada Bar No. 3748
barbara.johnston@rocketmail.com
8309 Shad Bush Avenue
Las Vegas, NV  89140
Tel. (702) 684-6163
Fax. (702) 541-6743

MATTHEW Q. CALLISTER, ESQ.
Nevada Bar No. 1396
mqc@call-law.com
CALLISTER & ASSOCIATES
823 Las Vegas Blvd. South, Suite 330
Las Vegas, NV  89101
Tel. (702) 385-3343
Fax. (702) 385-2899
*Attorneys for Plaintiff*

**U.S. DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| DAVID BRIGHAM YOUNG, | |
| Plaintiff, | CASE NO.:    2:12-CV-00091-RFB-GWF |
| vs. | |
| MERCURY CASUALTY COMPANY, | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

Plaintiff David Brigham Young ("Young"), by and through his attorneys of record, Barbara I. Johnston, Esq., and Matthew Q. Callister, Esq., hereby file Plaintiff's Response to Defendant's Motion for Summary Judgment.  This Response is made pursuant to F.R.C.P. 56(a) and is based upon the pleadings and discovery on file in this case, the following Memorandum of Points and Authorities, the Declaration of Young, including any documents and/or exhibits attached thereto, and any oral argument this Court may entertain at the time of hearing of this matter.

Dated this 24th day of August, 2015.

_____
BARBARA I. JOHNSTON, ESQ.

0

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     STATEMENT OF THE ISSUE:**

The theme of this case is "delay and deny".  Nine years is TOO LONG to wait for justice, after David Young has been forced to file no fewer than six prior cases, which were either filed by Young or derivative suits related to the single issue of Mercury's practice of "delay and deny".

**II.     STATEMENT OF FACTS:**

> **A.   Mercury's "Background" is Full of Inadmissible Commentary, Disputed
> Facts/Conclusions, Sprinkled With Condescension, Pejorative and
> Inflammatory Rhetoric; As Such, This Court Should Give It No Countenance.**

As the Court is aware, this case is all about a motor vehicle accident that occurred on **April 13, 2006**.  Mr. Young sustained major personal injury trauma, and his F 150 Ford Pickup truck was totaled, when Mr. Schork violated his right of way.   Mercury's three page "Background" rendition bears no resemblance to just to "sticking to known facts" with authority or supporting documents. Tentative words like "likely", "impatient", "speeding along at 40 miles per hour",[1] "unable to slow", "experienced litigant", "instantly retained counsel", are all subjective inflammatory rhetoric not supported by competent or admissible evidence, whatsoever.   Suffice it to say here, the following Response will detail Young's objective and document-supported background and history.  In addition to the **Attached Ex. "1"**, which details **Young's Dispute Over Mercury's Facts**, Young will rely the facts as disputed and detailed within the relevant and specific arguments.

## III. LEGAL ARGUMENT, POINTS AND AUTHORITY

**A.     Standard of Review**.  In determining summary judgment, a court applies a burden-shifting analysis.  **If** the moving party satisfies its initial burden, then the burden shifts to the

---

[1] Even though the speed limit was 45 miles per hour.

opposing party to establish that a genuine issue of material facts exists.  *Matsushita Elec. Indus. Co. v Zenith Radio Corp*)[2].  To establish the existence of a factual dispute, **the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial**.  *T.W.Elec. Serv., Inc. v Pac. Elec. Contractors Ass'n*[3].

When considering cross-motions for summary judgment, the courts "must review the evidence in support of each cross-motion."  *Fair Hous. Counsel of Riverside Cnty., Inc. v Riverside Two*.[4]  However, in determining whether to grant or deny summary judgment, it is not a court's task to "scour the record in search of a genuine issue of triable fact".  *Keenan v Allan,*[5] Rather, a court is entitled to rely on the nonmoving party to "identify" with reasonable particularity, the evidence that precludes summary judgment. *Id.*  (See Ex. "1" Plaintiff's Disputed Facts)  In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion. *The Analysis and Decision of Summary Judgment Motion.* [6]

As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be considered. *Bagdadi v Nazari*[7].  Mercury has failed to bring forth sufficient "material" undisputed facts with any **competent evidence**.   Where reasonable minds could differ on the material facts as issue, however, summary judgment should **not be granted**. *Warren v City of Carlsbad.* [8]

---

[2] *Matsushita Elec. Indus. Co. v Zenith Radio Corp*., 475 U.S. 574, 586 (1986).
[3] *T.W.Elec. Serv., Inc. v Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir. 1987)
[4] *Fair Hous. Counsel of Riverside Cnty., Inc. v Riverside Two,* 249 F. 3d 1132, 1136 (9th Cir. 2001).
[5] *Keenan v Allan,* 91 F.3d 1275, 1279 (9th. Cir. 1996)
[6] As cited in *Jaynes Corp. v Am. Safety Indem. Co.,* 925 F. Supp. 2d (D. Nev. 2013) @ p. 1100.
[7] *Bagdadi v Nazari*[7] 84 F. 3d 1194, 1197 (9th Cir. 1996)
[8] *Warren v City of Carlsbad,* 58 F.3d 439, 441 (9th Cir. 1995).

**B.  Mercury Had Neither A "Genuine Dispute" nor a "Legal Basis" To Delay and Deny Young's UM Benefits.**

Mercury argues in their MSJ that it relied upon two general areas of facts to support its "genuine dispute" argument with David Young.  The first alleged supporting fact that Mercury is relying on is what Mercury unilaterally called "a three-neutral panel" decision that found Mr. Young 60% at fault for the accident.  The second argued "genuine dispute" is their reliance on Ray Merala's Accident Reconstruction Report results.

**1.  A "Genuine Dispute" Defined:**

In *Phillips v Clark County Sch. Dist.*[9], a "genuine dispute" was found where the court reviewed an interpretation of the School District's insurance policy, "that the Policy provision had arguably had two equally reasonable interpretations for its denial of benefits to the Plaintiff." The insurance company relied upon a provision in the policy of insurance that was subject to two equally "reasonable interpretations", and thus, the Court reasoned that a "genuine dispute" had arisen.

*Guebara v Allstate Ins. Co.,*[10] held "[i]n order to establish a breach of the implied covenant of good faith and fair dealing under California law, a Plaintiff must show (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause".  *Guebarra* went on to hold**: "a 'genuine dispute' does not exist where there is evidence that the insurer failed to conduct a thorough investigation."**  *Guebara,* 237 F. 3d 937, 996, (9th Cir. 2001).

Mercury failed to conduct a thorough and timely investigation.  What do we know when? We know that Mercury withheld benefits for over six years! The reason for withholding was

---

[9] *Phillips v Clark County Sch. Dist.* 903 F. Supp.2d 1094, 1104 (D. Nev. 2013)
[10] *Guebara v Allstate Ins. Co., 237 F.3d 987, 992,*(9th Cir. 2001)

without proper cause because it failed to timely and competently investigate.  The first prong is obvious by virtue of the chronology and timeline of events.

Mercury took an adversarial position when Teresa Wake took the file over for Don Walden in early 2007, and then she failed to provide Mercury's retained counsel, Bruce Kelley, Esq. with the documents she had in her possession in March, 2007 through March, 2007, which included Dr. Kabin's prior records from 2004, through the present.  (See Ex. "2").  Mercury retained Bruce Kelley, Esq. to obtain an Examination Under Oath and retain three Defense Medical Experts.   The first EUO **September 13, 2007** was started but had to be continued because Kelley did not have the prior and current medical records that T. Wake had since March, 2006. (See Ex. "2").   Then, less than 4 weeks later, Kelley obtained Young's prior medical records as well as post 2006 records from 2002 that Wake had in her possession since March, 2007.  Kelley re-noticed the second EUO for **October 11, 2007**.  More delay and deny.

The records reflect that Mercury initially asked for three IMEs, but over the objections of Young's counsel, Aaron & Paternoster, it was agreed that only two IME's were necessary. In the fall of 2007, Mercury selected Dr. Richard Dix, MD, an Orthopedic surgeon, to sort out Young's pre-accident treatment from the post-accident treatment.  Young complied and attended the Examination as well as he cooperated providing Authorizations and lists of Medical Records, as well as pre and post-accident medical providers. (Ex. "2", "10", "23", "24")  Also, Mercury retained a neuropsychologist, Dr. Robert Asarnow, Ph.D., to evaluate Young's cognitive and mild traumatic brain injury, which went forward on March 24 and 25, 2008.  Mercury failed to timely pay Dr. Asarnow, so the report was delayed at least five months, being provided in August, 2009. Young complied attending both IME's.

If Mercury were taking an adversarial position with their Insured, Mercury was obligated to inform the insured and send a "reservation of rights" letter, to put the inured on

4

notice that they suspect that there may be cause to deny benefits to their insured. *Nat. Union Fire Ins. Co. v Hilton Hotels* Corp, No. 90-2189, 1991 WL 405182 @ #3 (N.D. Ca. May 6, 1991). There is no evidence that Mercury ever, at any time in 9 years, sent a "reservation of rights" letter to Young.  Also, Wake had Young surveilled in the summer of 2007, and again in 2009. FRASCO reported to Mercury that they found nothing after searching court records, credit bureaus, County Recorder's Records, Office, Vital Statistics, only reporting that they observed him carrying out his trash! (See Ex. "3")  Mercury was then treating Young as an adversary, suspecting that Young was dishonest—which is when and why an insurance company asks for an Examination Under Oath.  Between **April 13, 2006 and January 26, 2001** (the date of Martin Kravitz's favorable Arbitration Decision), Mercury neither obtained nor provided any adverse evidence that Young was dishonest, that he lied about any issue, or that he was wrongfully pursuing his UM funds.  Jeffrey Lipp testified in his Deposition that Young did not breach the contract of insurance, that Young cooperated with every Mercury request for Examinations Under Oath, two Independent Medical Evaluations, and any other request imposed on him.  (See Lipp Depo. Excerpts, Ex. "5")

**What did Mercury know and when?**

 * Young incurred over $200,000 in medical bills by the fall of 2007, (Ex. "6")
 * Young had TJM surgery in October, 2006, (Ex. "7");
 * May, 2007, Young had cervical spine surgery in March, 2007; (Ex. "8")
 * Mercury had written a letter to Thomas Margarit (the driver of the third vehicle) that "our insured is not legally liable for the subject accident" (Ex. "9");
 *  Young had settled with adverse driver, Christopher Schork, (Ex. "10");
 * Mercury's own IME Doctor, Richard Dix, MD, stated in his Report dated **December 1, 2007,** that both the TMJ surgery (November 2006), and the Cervical Spine surgery (**April, 2007),** were directly related to and caused by the subject MVA. (Ex. "11")
 * Bruce Kelley, Esq., Mercury's counsel, then wrote Teresa Wake a letter on December 4, 2007 that their IME Dr. Dix, MD, had attributed 100% of Young's medical treatment to the subject MVA; (Ex. "12").

Clearly, Young had established his legal entitlement to the UM funds of $250,000 by

5

December, 2007.  Note that what Mercury didn't relate in their "Background" was that Mercury **withheld producing the favorable Dix IME for 3 ½ years, until May 20, 2010.**  (See Ex. "13" for Mercury's List of Expert Witnesses and Report).  It is also significant that in the fall of 2007, Mr. Young had retained the law firm of Ganz and Hauf.  Marjorie Hauf on January 24, 2008 specifically asked Mercury for Dr. Dix's Orthopedic examination, Ex. "22", @ p. 2: **"Finally, please provide me with a copy of the report from the orthopedic doctor that examined Mr. Young, at Mercury Insurance's request."**  Mercury never provided that IME Report to Ms. Hauf, nor anyone else until well after two law suits had been filed.  More of evidence of Mercury's delay and deny and fraudulently withholding favorable evidence.

On May 11, 2007 Kelley advises Teresa Wake that "**we need to talk**", (see Ex. "24").  Bruce Kelley is never heard from again, and by March, 2008, Gordon Park had taken over for Mr. Kelley.  Mercury only finally took the at fault-driver, Christopher Schork's, recorded statement on **July 30, 2007**, 15 months later.  (Ex. "14")

Mercury was aware of a percipient witness, David Colvin, and never took his recorded statement, and years later, tried to get Farmers to give Mercury Colvin's recorded statement, to no avail.  (Claims diary Ex. "15")  Finally, it took Mercury over three years to finally let Young know that Mercury believed that he was more than 50% at fault for his own injuries, which was in Gordon Park's **June 8, 2009** letter, (Ex. "16" for Gordon Park's letter), along with giving Mr. Young a **deadline that Mercury was going to close its file if Park didn't hear from Young by July 9, 2009.**   The chronology belies any inference that Mercury did competent evidence to support a "genuine dispute" whether Young was entitled to his UM benefits.  At the time of the Park letter, Young had been accepted into a cognitive rehabilitation program in Mt. Sinai Rehabilitation program, Phase II in Mt. Sinai Rehabilitation Hospital, New York City, NY, so he

6

wasn't even in Las Vegas at that time.  Therefore, Young was not only unrepresented by counsel, but was incompetent, requiring a Guardian ad Litem while Mercury was closing his claim.

      **a)** **Mercury Relies On Ray Merala's Report 12/05/08, Which Is Suspect Based On the Claims Diary Entries and the Merala Supplemental Bill and One Page Supplemental Report of 05/29/09.**

In 2008, Mercury hired a Biomechanical Engineer to conduct an Automobile Reconstruction of the **April 13, 2006** Accident.  Note that May, 2009 over 3 years later! **On 12/05/08,** Mercury received the third revision of the Talas Engineering Report **(Ex. "17"),** signed by Raymond Merala, MS., P.E, who is a Biomechanical Engineer.  The Report is 8 pages long, (excluding photos, diagrams, etc.), where Merala details what he reviewed, which, significantly was by in large part Young's **medical records**, Dr. Asarnow's IME Report **and Dr. Dix's Report**.  **Biomechanics** is the application of engineering principles to biological systems in **predicting human injury.**  Merala's Report identified his objectives which were to present analysis of the accident:

> present my analysis of the accident;
> present a review of the medical records;
> provide analyses and discussion related to the brain injury allegedly sustained in the collision;
> and present my conclusions to date.

Significantly, on page 8 of his report, (Ex."17"), his first four conclusions are exclusively related to the injuries Young did not sustain.  The last two comments do not apportion liability—a fact not lost on the claims adjuster as noted in their diaries.  (Ex. "18")  Merala's final report did no **apportionment of liability <u>because he was never asked to do so</u>**— and because Merala is a **Biomechanical** Engineer, his focus was to determine whether the Delta V at the time of the impact with Schork **could have caused this claimant's orthopedic and brain injury Young claims.  He concluded that the Delta V was not sufficient to cause this claimant's brain injury, in concert with Dr. Asnarow's Report!  <u>What is significant here is that Merala made no comment or assessment of the orthopedic injuries because Dr. Dix clearly</u>**

7

**attributed them to the subject accident!**   **Therefore, Merala cannot reconcile his report with concluding that Young wasn't traveling fast enough to be injured with a closed head injury, but never addressing or reconciling how Young was injured orthopedically as confirmed by Dr. Dix.**

More importantly, sticking to the question of whether Merala was asked to apportion liability, Merala's Analysis of Accident **focuses exclusively on whether Young could have been injured or not, and his first provided report made no assessment of percentage of a liability split, whatsoever!** He said "the delta-V is the speed change a vehicle experiences in a collision." He concluded: "Considering the damage to the right side of the Ford F 150 pickup, **a lateral delta-V of less than five mph likely occurred in the initial impact**. Considering the extent of damage to the front structures of the ford F 150 pickup, it is likely that the pickup experienced a **delta-V of approximately 12 to 15 mph, perhaps, less, at the time of the second impact".** His conclusion was **that "neither collision is likely to cause a significant brain injury to a driver of a Ford F 150 pickup.**"

Merala concludes by saying: "Mr. Young **appears to have been travelling at a speed that was inappropriate for the conditions present. This statement becomes significant after one reads the underline claims diaries that will be discussed** *infra.* **Merala can't have it both ways**—if Young was traveling too fast for conditions as the report stated, then question, how it is that Merala finds that **the Delta V was 12 to 15** miles per hour on impact with the Margarit vehicle, which couldn't have cause a major brain injury—but then leaves out the Orthopedic Dr.'s conclusions? The assertions two are inconsistent, which is not lost on Mercury's claims reviewers, support by their Claims diaries, *supra.*

Bottom line **unless Merala had actually viewed the subject vehicles, namely Young's pick-up truck**, then in Nevada, the auto reconstruction expert is precluded from discussing the speed of the vehicles. Furthermore, the Biomechanical Engineers are typically excluded  from testifying about injury in Nevada under *Hallmark v Eldridge.*[11]   The following points are

---

[11] *Hallmark v Eldridge,* 189 P.3d 646, 654, (Nev. 2008).

excerpts taken directly from Mercury's Claims Diaries, which supports Young's contention that

Merala's **May 29, 2009** Report is Suspect:

- Claims diaries, MCF 000046 dated **12/05/08, (Ex. "18")**, SMARR entered:  "Jeff, you and I discussed case on 12/4……and the rest of the **next line and half is whited out or redacted**.  Then it says "**Is the liability consensus that he insured is at least 51% at fault for loss—and therefore barred from recovery?"**

  In the same document, MCF 00046, it goes on to say on 12/08/08, "**Accident reconstruction/bio-mech evaluation now complete and in file.**

- In the same document, MCG 00046, on **12/09/08**, SMARR noted the following about Merala's Report:  "We recently received the Ray Merala's reconstructionist opinion.  Mr. Merala comments  on the delta V and is of the opinion the insured was traveling at an **inappropriate speed for conditions** and inappropriately using a designate turn lane for through travel which was a significant factor in the resulting accident.  The **reconstuctionist does not believe the forces involved in the collisions would result in a significant brain injury.**  This is consistent with IME conclusion that the insured is not suffering from any significant cognitive impairment.

- MCF00047, **12/10/08, Mercury** sent the file for a Referral by a Claims Analyst, L Warrren, who enters the following:
   Referral reason: resubmission by branch with the recon analysis that was recommended during last submission. Expert opines that the insured's inappropriate use of the designated turn lane was a significant factor in the sequence of events that resulted in the subject accident.  **While significant to me suggest majority (>50%) not sure a jury would necessarily reach this conclusion as easily.  <u>CAN WE GET HIM TO CLARIFY WHAT HE MEANS BY SIGNIFICANT?</u>**  At another point in his report**<u>; the findings Insured may have been traveling at an excessive speed for the conditions as well.  Report also establishes forces not sufficient to produce the closed head injury being claimed.</u>**  On the downside; in the venue, **this report will not likely get into evidence**.  Instead, the evidence would need to be put to the jury to decide to what degree the Insured's actions contributed to the accident.  Question, can the PR be admitted as evidence in this venue?

  Here is where claim rep points out the inconsistency of Merala's report, but then, in

summary, says couched in so many words, well, let's **get Merala to say that Young is greater**

**than 50% liable**, without putting it into those words, **but then puts pressure on probably**

**Jeffrey Lipp, from Mercury to spend 30 minutes on the phone with Merala. (See**

**Supplemental Report and Merala Bill,Ex. "27")**

  Then the next several lines are redacted, and then it picks up with a following comment:
**"I agree, we aren't trying to hide anything from the insured; so there is no harm in**

9

**giving him this information now.** The invitation to meet is giving him an open forum to get his impressions out on the table". –more redaction—"If insured agreed to accept our offer; we should defer finalizing our liability position until after the meeting so that we can weigh all the facts fairly.  If he refuses, then we need to make our decision based on the evidence we have; in that case, I feel insured is more than 50%, and therefore barred from recovery".

Then MGR Review-NV UIM case enters the following…@ MCF00048:

**12/18/08 SMARR enters:** To JLipp:  Jeff, continue follow-up as recently outlined, **INCLUDING OBTAINING A MORE DEFINITIVE LIABILITY POSITION FROM THE RECONSTRUCTIONIST. MCF  000048. (Ex. "50")**

Here, Mercury appears to direct Lipp to get Ray Merala to do a supplemental report for "clarification" and to apportion liability greater than 50% on their own insured.  Merala provides the Report dated **12/05/08 issue of "A MORE DEFINITIVE LIAILITY POSITION", when the December Report was totally absent any liability call or allocation of percentages of fault.**

   Then, 02/04/09, (see Ex. "18", p. 48, MCF 000048—top 00049), "We just rec'd a bill from reconstructionist Talas Engineering for **$11,585.45**.  You are following up for clarification on the bill as the amount owed appears excessive. <u>**WE DON'T EVEN HAVE A DEFINITIVE LIABILITY POSITION FROM THE RECONSTRUCTIONIST.  BE SURE WE GET THIS TOO (SOONER VS. LATER)…**</u>Continue efforts to improve lines of communication with insured and arrange a meeting in Las Vegas at a time convenient for the insured, to discuss his case, his perspective and ours."

Claims pressure mounts, forcing someone to talk to Ray Merala, and this statement makes it clear that it was to manipulate Merala into changing his report to say what Mercury apparently wants him to say.  After reading the newly un-redacted Claims Diaries, the common sense conclusion is clear that Mercury was **attempting to influence their retained expert's opinion while putting on the "full court press" to meet with Young while he is incompetent and not attorney.**  Clearly, Mercury's reliance on Merala's report is suspect, even if this Court ultimately allows Merala to testify at trial.   Even if this report is deemed to be admissible, it is still 3 years and 3 months after the subject MVA, and demonstrates the theme of lack of

"dispatch" and lack of competent claims investigation.  Mercury seemed not to know that

Nevada disfavors admission of Biomechanical Engineers.  *Hallmark v Eldridge @ 652.*[12]

B. **Mercury Perilously Relies Upon is the Arbitration Forums, Inc. Documents.**

**i.)** As a predicate, Young objects to Mercury's use of the Arbitration Forums, Inc.

documents as Exhibits that support their alleged "genuine dispute", which are Defendant's

Exhibits "H" and "W", (Ex. "19"),  on the basis that the documents are not admissible evidence.

*F.R.C.P. 56(2).*  **First, THE DATES ON THE DOCUMENTS ARE ALL DIFFERENT.**  It

appears as though Mercury has taken three separate hearings and spliced them into one

document, and then separated them in Ex. "H" and "W"—presumably so the incongruity would

not be noticed.  It is well settled that documents which are not properly authenticated cannot

support a summary judgment motion. *Cristobal v Siegel*[13].  Authentication is a condition precedent

to admissibility, and this condition is satisfied by evidence sufficient to support a finding that the

matter in question is what its proponent claims.  *Orr v Bank of Am, NT & SA.*[14]  The proponent of

evidence must make a *prima facie* showing of authenticity such that a reasonable juror could find

in favor of authenticity.  *U.S. v Chu Kong Yin.*[15]  Such evidence must also be admissible pursuant

to FRE 901, and there is no indicia that the two exhibits meet this criteria, pursuant to F.R.C.P.

56(e).  Therefore, Young moves to exclude such consideration by the Court.

It is well settled in law that an Arbitration Decision to be competent and must be

confirmed by a court pursuant to **NRS 38.***et seq*. *See Lagstein, M.D. v Lloyd's Underwriter at*

*London.*[16]  Mercury never attempted to confirm this incompetent property-split decision into a

competent Order, much less had it authenticated—even if it could be confirmed by a Court.

---

[12] *Hallmark v Eldridge,* 189 P.3d 646, (Nev. 2008)
[13] *Cristobal v Siegel*[13], 26 F.3d 1488, 1494 (9th Cir. 1994)
[14] *Orr v Bank of Am, NT & SA,* 285 F.3d 764, 773 (9th Cir. 2002).
[15] *U.S. v Chu Kong Yin,* 935 F.2d 990, 996 (9th Cir. 1991).
[16] *Zev Lagstein, M.D. v Lloyd's Underwriter At London*, Case No: 2:03-cv-01075, GMN-LRL (US District Ct., Nev. 2011).  11

Therefore, this Court may not consider the Arbitration Forums, Inc. documents as any supporting evidence to their Motion For Summary Judgment.  Mercury is "grasping at straws" in order to justify their conduct.

Pursuant to **F.R.C.P. 56(e),** *Failing to Properly Support or Address a Fact*. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as require by Rule 56(c) the court may: (1) give an opportunity to support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it or; (4) issue any other appropriate order.

Mercury can make no showing of any authenticity of the two exhibits H and W to allow this court to rely on them as competent evidence, and as such, the Court should not consider them as any evidence at all.  Even if Mercury could survive competency of the documents, FRE 801 on Hearsay would most likely keep them out of the jury's consideration.

ii)     **The Purpose and Function Arbitration Forums, Inc. Is Limited Exclusively to Property Damage Evaluation To Avoid Costly Insurance Company Litigation Rendering the Documents Incompetent and Inadmissible in Trial.**

Even if the Court can get around the Competency and Admissibility arguments, there still remains the "weight and sufficiency arguments" coupled with "hearsay arguments".  The Court may not grant summary judgment based on incompetent documents.  The competency of the documents is called into question because there were actually three applicants with three different case numbers. As stated above, the fact that dates on their Exhibit "H and "W" are different, which ostensibly separates the dates of the documents, the Docket numbers and the Applicants. In any event, the sole function of Arbitration Forums, Inc., ("AF, Inc."), is an informal voluntary forum for member insurance companies' claims adjusters to either agree between themselves on property damage splits, or the Insurance Companies may agree to submit

12

their property damage split to an Insurance Claims Adjuster who serves as an Arbitrator on issues of **property damages only**. (Mercury's Exhibits "H" and Ex. "W").  Mercury **incorrectly** labeled the process as a "three-neutral panel", implying in their Motion for Summary Judgment that AF, Inc. is a "tribunal.  It is NOT a "three-person panel" as Mercury implied **unless it is specifically requested**, and in all of the Arbitrations Forums, Inc. documents that Mercury supplied, there was no evidence that a "three-person panel" decide the issue.   The three arbitrators listed on the Exhibit were most likely from three separate Applications made by each party.

But even if there were three Arbitrators, or "20 Bishops", it still doesn't render the documents competent and admissible.  Furthermore, Mercury's documents are incomplete as there were **three different Arbitration Forums, Inc. Docket  numbers, and the cases kept getting consolidated, such that there were three processes** going on at the same time, where each company, Progressive (Schork), Farmers, (Margarit) and finally in the fall of 2007, Mercury (Young) filed as "Claimant".  Hence, there were three different Arbitrators, each was assigned to each as a Claimant and it doesn't compute that there was a "tribunal" who made a unilateral decision.

Procedurally, the Arbitration Forums, Inc. process entails that the disputing insurance companies submit their facts known as "Contentions" to another insurance property claims adjuster who acts as an "Arbitrator".   Schork's Contentions were misleading and factually incorrect, yet Mercury failed to challenge them.  The request for Arbitration begins with an Applicant and each other party are called Respondents.  That's It! (See Ex. "20") for Arbitration Forums, Inc. Resource Reference Manual for Member Arbitrators.)  Moreover, the documents submitted to AF, Inc. are not required to be authenticated, nor are the documents based on standards of admissibility such as a Court requires, and as such, the documents lack competency

13

and authenticity, they contain hearsay, hearsay within hearsay, and the result is that the documents are simply an insurance company's "self-serving" Contentions, with no indicia of authentication either present or required.  The process itself is conducted by other insurance adjusters, not even lawyers, certainly not judges, nor even administrative law judges.  There is no under-oath testimony taken in front of a court reporter provided, there are no affidavits or Declarations, and as such, these documents never qualify for admission into evidence before a civil proceeding, much less get to a jury.  (See Arb. Forums Inc., Rules, as (Ex. "20").

Therefore, for a sophisticated company who insures millions of vehicles, for Mercury to place any reliance on inadmissible documents at trial reflects either a lack of any genuine dispute and/or they are grasping at straws.  Bottom line, the AF, Inc. documents lack admissibility, credibility and/or reliability.  Richard Cass, Young's bad faith expert testified in his deposition that in his 30 years of experience, the A.F., Inc. property damage assessments are never admitted into evidence at trial.  (Ex.  "21" Cass Depo Excerpts)  Finally, in any event, the Arbitration Forums, Inc. documents are not properly authenticated for purposes of their Motion for Summary Judgment and as such, they are hearsay pursuant to F.R.D. 801 through 807, and there is no exclusion available from the Hearsay rule.  As such, these documents cannot support a summary judgment motion.  *Cristobal v Siegel.* [17]

### iii)   <u>Mercury Argues That It Did Not Engage In Any of the Four Alleged Unfair Claim Practices Set Forth in NRS 686A.310.</u>

Plaintiff's Complaint in the instant case, filed on **January 19, 2012**, alleges generally, violations of NRS 686A.310, and a cause of action for common law bad faith.  The Complaint emphasizes details of violations of NRS 686A.310 (b)(e)(f) and (n), but under F.R.C.P. Rule, 8, the Complaint and the proofs may encompass other less specific violations of NRS 686A.310, to

---

[17] *Cristobal v Siegel,* 26 F.3d 1488 1494, (9th Cir. 1994).

be addressed at the time the Court hears argument on jury instructions.  Simply because the Complaint details specific acts under (b)(e)(f) and (n), certainly **does not preclude the inclusion of other acts that may fall under (a) through (p) at the time Jury Instructions are agreed upon by this Court.** NRS 686A.310 addresses *the manner in which an insurer handles an insured's claim whether or not the claim is denied.* *Zurich American Ins. Co. v Coeur Rochester, Inc.*[18]

### 1.  <u>Mercury Argues That It Acknowledged and Acted Reasonably Promptly.</u>

**NRS 686A.310 (b):  Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.**

The significant issue is ***the manner in which an insurer handles an insured's claim, not whether or not the claim is denied.***   *Zurich American Ins. Co. v Coeur Rochester, Inc.*[19]  While Mercury took Young's recorded statement on **April 19, 2006**, and while Mercury settled with Young on the property damages on or about **May 5th, 2006**, Mercury failed to  conduct a competent and complete investigation with **"dispatch".**  Initially, Mercury should have taken the recorded statements from Christopher Schork (who violated Young's right of way), and Thomas Margarit, who was not at fault at all.  Also, there was a percipient witness, David Colvin, and Mercury never attempted to locate him until June 26, 2008.    (See Claims Diary, Ex. "15").  Schork's recorded statement was only conducted on **July 30, 2007**, fifteen months after the accident! (See Ex. "14").   Mr. Margarit was so angry at both Mercury and Progressive, that the claims diaries show that when he was finally contacted in 2007, he refused to give his recorded statement.

Mercury failed to competently participate in the Arbitration Forums, Inc. process, which is informal intercompany process to determine who will pay any property damages.   Finally, in

---

[18] *Zurich American Ins. Co. v Coeur Rochester, Inc.*, 720 F. Supp. 2d. 1223, 1226 (D. Nev. 2010).
[19] *Zurich American Ins. Co. v Coeur Rochester, Inc.*, 720 F. Supp. 2d. 1223, 1226 (D. Nev. 2010).

15

**December, 2007**, a Mercury supervisor directed Michael Fitzpatrick, claims adjuster, to Petition as the "Claimant", which by then, was too late for Arbitration Forums to revise their prior decision, which was that Progressive met its burden of presentation that Young was 60% at fault and Schork was 40% at fault.  (Ex. "19")    Here again is evidence of "delay and deny" which prejudiced Young.

Further, there is no evidence that Mercury advised Mr. Young that he had a right to be present at the Arbitration Forums, Inc. or to give any kind of testimony there.  Mercury failed to be the Claimant until Michael Fitzpatrick was directed to do so late in 2007, some 20 months after the accident!   In any event, the Arbitration Forums, Inc. processes are not for the division of bodily injury liability split, they are incompetent hearings as the "deciders" are not judges, or even lawyers, they are other insurance adjusters. (See Ex. "20" AF, Inc. Website Documents) There are no "under oath statements", no depositions used, no evidentiary competency, other than an insurance adjuster's rendition of the facts which are not under oath or Declaration, such that the AF, Inc.'s documents are never Authenticated pursuant to FRE 901 or NRS 52.015.  As such the Arbitration Forums, Inc.'s decision on property damages should never be admitted into evidence on the issues of liability or damages at the time of trial or hearings on the matter. (See Richard Cass Deposition excerpts, Ex."21").

Facts demonstrating legal entitlement are supported by the following documents:  on **February 22, 2007,** A & P sent Don Walden a letter **(Ex. "10")**, informing Mercury that Schork's insurer, Progressive, had paid Young $15,000 on **November 15. 2006,** enclosing a copy of the Release and check from Progressive.  **Further the letter informed Mercury that Young has been recommended for a cervical fusion at C4-5.**   Finally and significantly, *Mr. Aaron asked "**if there are any conditions or terms that we must initially meet…please inform us immediately**".*

Then, **June 29, 2007**, when Aaron & Paternoster made their first Demand Letter, (Ex. "23") Teresa Wake, then Claims Adjuster, simply wrote that she didn't have enough information and needed a medical authorization, with a list of providers, even though in **March of 2007**, Ms. Wake received Dr. Kabins 2002 forward records.  (Ex. "2","24") Additionally, Ms. Wake had been provided an updated list of providers to augment her Medical Authorization signed and provided on **May 11, 2007**.  (Ex. "24")  This is yet another example of delay and deny.

Then mid-2007, Mercury hired Bruce Kelley, Esq. to conduct an EUO, and three IME's. Ultimately, two EUO's went forward, in part because Wake did not provide Kelly documents she had in her possession in March, 2007, which included 2002 Kabin's prior records to Kelly, by the time of the first EUO, which was **September 13, 2007**. So then Kelley continued the EUO to a month later, **October 11, 2007,** Ms. Wake finally gave the documents she had since March, 2007 to Mr. Kelley.

In fact, the timetable will demonstrate that Mercury never took any depositions until litigation was initiated in 2010, it never did any competent investigation or questioning of the police officer, Guy Cunningham, nor a percipient witness, David Colvin,  and then threw Mr. Young "under the proverbial bus" in Mr. Park's Arbitration Brief.  (See Ex. "25").  In that Arbitration Brief, Mercury relied upon an incompetent investigation of Officer Cunningham and then mis-quoted testimony. Clearly, Mercury never conducted a competent, unbiased and fair investigation, much less an investigation "with dispatch".  Then in a desperate attempt to justify what they had done in the past 3 years, in June of 2009, Mercury pressured Merala to "clarify" something in his first report, which was a "detail" clearly absent—and was not "something he wrote that they didn't understand", but rather it was to **ADD SOMETHING that he was never asked to do in the first place….**which was to apportion Mr. Young's liability—that Young was more than 50% at fault.  The initial scope of Merala' Report was, as a biomechanical engineer, to

factor the Delta V, which is impact speed, and whether it could have caused Mr. Young to receive a closed head injury. This demonstrates Mercury's feeble attempt to justify their delay and deny protocol.

Then Mercury forced Young to file suit, which was not even required under Nevada Law nor case authority to get a "Judgment".[20]  Thereafter, Mercury removed the State Court case A-539366-C to Federal Court  2:09-cv-02399 JCM-LRL.  After Judge Mahan **denied Mercury's Motion to Bifurcate the Bad Faith Action,** Mercury's counsel then convinced California attorneys to Dismiss the current Federal Court case and forced Young to file another case for Bad Faith and violations of the Nevada Unfair Claims Practices Act, which is the instant case.

In summary, the significant issue is *the manner in which an insurer handles an insured's claim, not whether or not the claim is denied.*   *Zurich American Ins. Co. v Coeur Rochester, Inc.*[21]   The court may deduce that there clearly was an improper handling of the Young's case.

## 2.   Mercury Claims That "Liability was only Reasonably Clear" After Judgment.

**(e) Failing to effect prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.**

First of all, the case authority says that the insurance company need not have "judgement" before Liability is reasonably clear. *Pemberton v Farmers Insurance Exchange. Id. 384.*  It took Mercury from **April 13, 2006** to **January 26, 2011**, nearly five years to finally acknowledge that liability was "**reasonably clear**".  But, it wasn't "reasonably clear" before that--it was **"crystal clear before January 26, 2011."**  Then Mercury took another nearly 2 more years from **2011 to June 15, 2012** to pay the funds of $250,000 over to the court in an

---

[20] *Pemberton v Farmers Insurance Exchange*, 109 Nev. 789, 858 P.2d 380, 384.
[21] *Zurich American Ins. Co. v Coeur Rochester, Inc.*, 720 F. Supp. 2d. 1223, 1226 (D. Nev. 2010).

Intervenor Action. (Ex. "60" to Pls MSJ).  Clearly and undeniably, it is a Jury Question as to whether now 9 years is reasonable.

Mercury had ample evidence and support that liability had become "**reasonably clear**" in the fall of **2006**, when Progressive, Schork's insurer, paid policy limits to Young.  Schork could have sued Young if Young were Young were more at fault than Schork, but Progressive just paid Young and obtained a release against Schork. Further, liability had become "reasonably clear" when Don Walden wrote Thomas Margarit a letter that "our insured, David Young, bears no legal liability for the subject accident".  (Ex. "9")

Soon thereafter, Mercury was informed that Mr. Young had to have and did undergo, TMJ surgery in October, 2006, so his damages were now starting to climb, yet Mercury took an adversarial position, treating Young as though he were an opportunistic third-party insured. The delay from **April 13, 2006 until mid-2012, six years**, is too long to wait for UM benefits. Sadly, because of an excess of $200,000 went for attorney's fees, costs and a Bridge Loan for living expenses, Young only netted just under $40,000.  The facts don't lie that Mercury failed to effect a fair and prompt settlement of their insured when liability was "reasonably clear in the fall of 2006.

> 3. **Mercury Contends That It Provided Young with Advantageous Dispute Resolution in Response to Plaintiff's NRS 686A.310 (f) Allegation.**
>
> **§f Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.**

> a) **Mercury's Alleged Advantageous Offers To Meet and Resolve**:

Mercury claimed that it provided Mr. Young with Advantageous Dispute Resolution alternatives before he filed suit.  It took Mercury 3 years and 2 months for Mr. Park to write his

infamous 4 page rhetoric, **raising for the first time that Mercury deems Young to be more at fault than Schork for the subject MVA**! (See Ex. "26")  **Mercury claims this is their defense, that Mr. Park offered Young with Advantageous Dispute Resolution.**  This letter may have been received at Young's home, but he was in Mt. Sinai Hospital Phase II program in New York City, NY in a cognitive retraining program.  He had no counsel at that time and he was incompetent, requiring a guardian ad litem, as he now has in the instant case.

      **b)  Mercury Clearly Forced and Compelled the Filing of Multiple Law Suits:**

In the instant situation, from **April 13, 2006** until the Court Order in the Interpleader action filed on **June 14, 2012,** Mercury had made **no monetary offer whatsoever.**  Because of that, the following law suits have been filed:

State Court:  **A-517171-C,** (believed to be to adjudicate attorney liens)
**08-560589-C**, filed and dismissed for technical reasons;
**09-A-539366-C**, State Court Case where Mercury demanded Binding Arbitration.
**09-603171-C**, Filed by Mercedes Broughton on behalf of Young; this case was
                Dismissed by Motion when Mercury removed Case 539366-C.
**09-cv-02399** JCM/LRL Fed. Court case after removal of A-539366;
**11-641139-C** Mercury's Interpleader for the $250,000;
**2-12-cv-00091** RFB-GWF, current case.

Mercury had all facts necessary to determine liability, when, Christopher Schork's insurer, Progressive, accepted liability, that Schork was more at fault than David Young, and Progressive paid its policy limits to Young on **November 11, 2006**.  (Ex. "10")  Additionally, Mercury's adjuster, Don Walden, wrote Thomas Margarit, (parphrasing) that Mr. Young is not legally liable for Mr. Margarit's injuries or property damages. (Ex. "9").  These two events support the fact that Young had then established Legal Entitlement.  It was unfortunate that this was a major accident, and that Mr. Young was a fragile plaintiff, who had a prior injury to his neck, though it was as a different cervical spine level.  However, Mercury took an adversarial position with Young, who was incurring substantial damages with one TMJ surgery and a discectomy in March, 2007.  Mercury delayed making any offers by seeing and Examination

20

Under Oath, which it is well-settled that an EUO is conducted when the insurance company believes that their insured is being untruthful or dishonest in it presentation of symptoms and medical bills. Also Mercury then sought to take three Independent Medical Examinations in the fall of 2007, to which two IME's did go forward, one neuropsychologist, Dr. Ansarow, and one orthopedic surgeon, Dr. Richard Dix. Most assuredly, the delays were caused by Mercury, where Mercury did not pay Asarnow timely, delaying his report for six months. (Ex. "18")

However, on **December 1, 2007**, Dr. Dix provided Mercury with a detailed report of an examination and a records' review from 2002 through 2007. Dr. Dix rendered the opinion that **all of Young's treatment since April 13, 2006 was directly related to the subject motor vehicle accident, except for the diabetes treatment.** Dr. Dix offered no opinion on a closed head injury as that was out of his area of expertise. By December, 2007, Young had around $200,000 in medical bills. Further, Bruce Kelley, Esq. wrote to Teresa Wake in December, 2007 that Dr. Dix had related the TMJ and cervical fusion to the subject motor vehicle accident, whereupon Kelley is replaced by Gordon Park, Esq.

Teresa Wake evidently chose to ignore this new information. Moreover, Mercury did not produce this Report until **May 20, 2010 AFTER** Young had filed suit! **NRS 686A.310(a) defines "misrepresenting to insured or claimants pertinent facts or insurance policy provisions relating to any coverage at issue,"** *Zurich, infra, @ p. 1237,* held: "misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue to be an unfair practice." The deliberate misconduct is clarified when Marjorie Hauf, Esq., specifically requested the Dix Orthopedic evaluation. (Ex. "22"). That Report was never sent to Ms. Hauf. Clearly Mercury and their adjusters handled this claim as though Young were not a First Party Insured. But the undeniably egregious conduct was that Mercury had withheld this report for 3 ½ years after it was provided to Mercury constitutes misrepresentation by omission.

Similar mis-conduct arose when Mercury retained Ray Merala to do an Auto Reconstruction Report in 2007. Ray Merala is a "Biomechanical" Engineer and the scope of his investigation was to determine the facts of the subject accident and as a biomechanical engineer, and he was provided with all of Young's medical records to "determine whether the subject accident could have caused Young's traumatic brain injury and whether the Delta V impact was forceful sufficiently to cause such a head trauma". Merala's first report of December 8, 2007 did not include any apportionment of liability. After Young received un-redacted Claims Diaries in May, 2015, the claims adjuster/supervisors pressured both Jeffrey Lipp and/or Gordon Park, Esq. to convince or influence Mr.Merala to **amend his initial report** to include an apportionment of liability, and obviously such apportionment would have to be adverse to Young. (See Ex."17" and "27") . This is yet another violation of NRS 686A.310 *et seq.*

The only conclusion is that Mercury's conduct precipitated the necessity of the various law suits by even failing to offer **any funds whatsoever during the then six year saga**, which is still ongoing today, over 9 years later! Most assuredly, Mr. Park **forced** Young to file suit to obtain a "Judgment" that finally determined that Schork was 66 2/3% at fault. Then, once Mercury received the Binding Arbitration Decision, then it took them almost 2 more years to pay the funds to the court in an Interpleader Action. Mercury's conduct was directly responsible for "**compelling the insured to institute litigation**". Moreover, David only received $40,000 out of the $250,000, with the rest going to fees, costs, and a Bridge loan for $10,000 which turned into $40,000.   The only conclusion a jury could reach is that Mercury's conduct was egregious bad faith in violation of **sub ¶ f**.

    4.   **<u>Mercury Attempted to Close Young's Case While He Was Getting Treatment in Mt. Sinai Rehabilitation Hospial, Where Mercury Took 3 ½ Years  To Finally Disclose To Young Their Liability Assessment.</u>**

**NRS686A.310 §(n), Failing to *provide promptly* to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the**

22

**insured's claim and applicable law, for the denial of the claim or for an offer to settle or compromise the claim**.

As laid out more fully *infra,* the theme of the case is **"delay and deny**", which apposite facts *infra,* are fully incorporated herein by reference.  The first time in almost 3 ½ years, that Mercury **finally revealed to Young that they believe that he was greater than 50% at fault was in Gordon Park's June 8, 2009** four page letter, attached hereto as Ex.  "26".  Whether that is reasonable is also another jury question.

However, Mercury's Motion for Summary Judgement ignores the fact that NRS 686A.310(n) requires that Mercury shall **"provide *promptly* provide an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle."** Additionally, Park's **June 8, 2009** letter shifts the blame of **any delay on Young**, who Mercury knows that Young has had cognitive impairments, and who had a GAL previously assigned by counsel.  Mercury was then taking advantage of the fact that Young now was without counsel in 2008-2009, when Park was pressuring Young, which was directed by Mercury's claims adjuster/supervisors.  See Claims diaries.  (Ex. "18")

Further, there is simply no evidence that Mercury ever offered even an insignificant amount to settle.   Mercury had entrenched in its unreasonable position, and any mitigating facts were ignored or buried, as in the case of the Dix Report or influenced as in the case of Merala, and delayed as in non-payment of Dr. Asarnow for his Report for over 6 months.  Here is yet another example of Mercury's delay and deny.

   2. <u>**Mercury Argues That Young Has No Evidence of Damages from Violations of The Unfair Claims Practices Act: Legal Authority Allowing Attorney's Fees**</u>:

Where a court sits in diversity, as in the instant case, it must be determined if state law or federal law provides the standard to award attorney fees by applying the *Erie R.R. Co. v*

23

*Tompkins,* 304 U.S. 64, 58 S. Ct. 817 (1938).  The first step in an *Erie* analysis is to determine whether the law involved is procedural or substantive.  If the law is procedural, the federal law will apply; if substantive, the Court will apply the law of the forum state.  *Walsh v Kelley*[22]

*In re Larry's Apartment, LLC,*[23]  "**[A] federal court sitting in diversity applies state law in deciding whether to allow attorney's fees when those fees are connected to the substance of the case**".  Thus, state law of Nevada will be applied to determine if attorney fees can recovered.  *Tracey v American Family Mutual Ins. Co.* 2010 WL 547771 @ p. 4-5, (D.Nev., 2010).  [24]

In Nevada, attorney's fees cannot be recovered unless authorized by agreement, or by statute or rule.  *Young v Nevada Title Co*[25].  Procedurally, when parties seek attorney fees as a cost of litigation, documentary evidence of the fees is presented to the trial court, **generally in a post-trial Motion**.  *Sandy Valley Assosiates v Sky Ranch Estates Owners Ass'n*.[26]

Mercury argued that *Tracey v American Family, infra @ pages 4-5, held that* **"Attorney's fees are not recoverable from damages arising from a purported violation of NRS 686A.310**." @ p. 18 of their MSJ, lines 12-23.  This is patently an incorrect statement of the holding in *Tracey, infra.*

On the facts in *Tracey v American Family Mutual Ins. Co.. (foot note 33)* the Court did not initially allow attorney's fees as part of the breach of the Unfair Claims Practices Act; however, the **Court's detailed rationale also does not, as a bright line rule, exclude attorney's fees pursuant to NRS 686.310, and it is instructive as to the process of analysis required.  The *Tracey* Court reasoned that the Court should consider whether NRS 18.010 (b) if the court finds that defendant maintained its defense without reasonable ground or to harass.**

---

[22] *Walsh v Kelly,* 203 F.R.D. 597, 598 (D. Nev. 2001).
[23] *In re Larry's Apartment, LLC,* 249 F.3d 832 (9th Cir. 2001)
[24] *Tracey v American Family Mutual Ins. Co.* 2010 WL 547771 @ p. 4-5, (D.Nev., 2010).
[25] *Young v Nevada Title Co.*, 744 P.2d 902, 905 (Nev. 1987).
[26] *Sandy Valley Assosiates v Sky Ranch Estates Owners Ass'n* 35 P.3d 964, 969 (Nev. 2001).

24

Basically, the Court in *Tracey* is instructive that this court must examine the circumstances surrounding this case to determine whether the defenses were maintained without reasonable grounds.  The *Tracey Court* discussed that the Plaintiff was the prevailing party on both his breach of contract and NRS 686A.310 Unfair Practice claims….furthermore, this Court found as a matter of law, Defendant violated two sections of NRS 686A.310.  The *Tracey Court* ruled that "**Plaintiff appears to be entitled to a finding that the Defendant maintained its defense to the Nevada Unfair Claims Practices Act unreasonably**". @ p.7-8.  But then the Court receded on the award on this exclusive basis, but then went on to consider whether attorney fees are allowed under **NRS 686A.310(2)** which states:

> **(2) In addition to any rights or remedies available to the Commissioner, an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice.**

The *Tracey* Court went on to say that American Family was not unreasonable in maintain the Defense, nor could the Court find any Nevada that attorney's fees are allowed under NRS 686A.310(2**). But the inquiry did not end there**.  The court ruled that under  *Sandy Valley Associates v Sky Ranch Estates Owners Assn'n*[27] , **a party can claim attorney fees as foreseeable damages arising from a breach of contract and such fees are considered special damages**. @ p. 971.  *Sandy Valley* held:  **When attorney's fees are alleged as damages, they must be specifically pleaded and proven by competent evidence at trial**, just as any other element of damages…and when attorney's fees are considered as an element of damages, they must be the natural and proximate consequence of the injurious conduct. *Id. @ 969.*

Young's Complaint sought attorney's fees for Unfair Claims Practices Violations of NRS 686A.310 and Bad Faith (Breach of the Covenant of Good faith and Fair Dealing), and Prayed

---

[27] *Associates v Sky Ranch Estates Owners Ass'n* 35 P.3d 964 969 (Nev. 2001)

for Consequential Damages and attorney fees,  Special Damages and attorney fees, and Punitive

Damages.  In allowing attorney's fees for violations of the Unfair Claims Practices Act, the

*Tracey* Court then ultimately ruled:

> **As explained *supra* to be awarded as damages, attorney fees must be pleaded as special damages and need to be litigated at trial.  Plaintiff's Complaint included specific allegations with regard to attorney's fees.  Defendant cannot now argue that since specific evidence of attorney's fees was not presented at trial Plaintiff is not entitled to them. Therefore, the Court finds that as a result of the jury's specific factual finding that section (1)(f) of the Nevada Unfair Claims Practices Act was violated by Defendants, attorney's fees can be awarded as a matter of law to Plaintiff as proximately and necessarily caused damages incurred as a reasonably foreseeable consequence or result of Defendant's breach of contract. *Id.* P. 11-12.**

> **In *Tracey*, the Court awarded 40% of the jury verdict of $200,000, which was $80,000 as attorney's fees!**   Therefore, Plaintiff is entitled to his attorney's fees as damages.

### 3.   Mercury Argued that There Is No Evidence of Malice, Fraud, Or Oppression by Mercury in Handling Young's Claim.

Under Nevada Law, punitive damages are allowed for breach of the covenant of good faith and fair dealing, also known as common law bad faith.  To establish a claim of bad faith refusal to pay an insurance claim, a plaintiff must show that the insurer had no reasonable basis for disputing coverage, and the insurer knew or recklessly disregarded that fact that there was no reasonable basis for disputing coverage.  *Powers v United Srvs. Auto. Ass'n.*[28]. Plaintiff  must show by clear and convincing evidence that the defendant acted with oppression, fraud or malice. *Pioneer Chlor Alkai Co. v National Union Fire Lis. Co.*[29]

Oppression is a conscious disregard for the rights of others constituting cruel and unjust hardship. *Id.* Malice is present in conduct that is intended to injure a person or despicable conduct that is engaged in with a conscious disregard of the rights and safety of others.  *Fries v*

---

[28] *Powers v United Srvs. Auto. Ass'n,* 962 P. 2d 596, 604, (Nev. 1998).
[29] *Pioneer Chlor Alkai Co. v National Union Fire Lis. Co.* 863 F. Supp. 1237,    , (D. Nev. 1994)

26

*State Farm Mut. Auto. Ins. Co.*[30] No. 3:08-cv-00559-LRH-VPC, 2010 WL 653757 @ 4 (D. Nev.

February 22, 2010). Young had demonstrated the obvious, which is unreasonable "delay" in

resolving his claim which demonstrates malice, particularly because his medical bills were in

excess of $200,000 by mid to late 2007. (Ex. "6"), Young believes that the trier of fact could

indeed determine that the Defendant's actions and in actions were malicious or oppressive.  See

*Storlie v State Farm Mutual Auto Ins. Co., Id.*  The known facts show that Mercury's handling of

the claim from the time that Teresa Wake took over for Don Walden early 2007, Mercury's

decisions and conduct were oppressive, fraudulent, and they exhibited a conscious disregard of

Young's rights in their claims handling.   Nevada law authorizes an award of punitive damages

"for the breach of an obligation not arising from contract, where the defendant has been guilty of

oppression, fraud, or malice".  NRS 42.005.

  The standard is whether the Plaintiff can establish with sufficient evidence by a clear and

convincing standard, that the Defendant is guilty of **oppression, fraud or malice**.  To establish

that the Defendant is guilty of "oppression", Young must show that the Defendant acted with a

"**conscious disregard for the rights of others which constituted an acts of subjecting Young

to cruel and unjust hardship**".  *Ainsworth v Combined Ins. Co. of Am.*[31]  **The question of

oppressive conduct is one of fact for the jury to decide.  *Buzz Stew, LLC, v City of N. Las

Vegas, NV.*[32]**  Young incorporates the facts herein by reference as to the blatant withholding of

favorable evidence of the Richard Dix, MD, IME for 3 ½ years.

  Also, the clear manipulation of the Merala's report warrants a finding of oppression.

Lastly, it is clear from the claims diaries that orders were given go Jeffrey Lipp to keep the line

---

[30] *Fries v State Farm Mut. Auto. Ins. Co.* No. 3:08-cv-00559-LRH-VPC, 2010 WL 653757 @ 4 (D. Nev. February 22, 2010).
[31] *Ainsworth v Combined Ins. Co. of Am.* 104 Nev. 587, 763 P.2d 673, 675 (Nev. 1988)

[32] *Buzz Stew, LLC, v City of N. Las Vegas, NV.* (131 Nev. Advance Op. 1 (No. 55220, Supreme Court of the State of Nevada, January 29, 2015).

27

of communication with Young to get him to meet with Gordon Park to settle the case at a time

when Mercury **knew that Young required a Guardian ad litem, and he had no attorney**.

Further evidence is demonstrated in Bruce Kelley's sudden and mysterious disappearance after

Kelley told Ms. Wake that Dr. Dix attributed the two surgeries to the subject MVA of 04/13/06,

and that "we need to talk." (Ex. "12")  Mercury replaced Mr. Kelley with Gordon Park. The

simple act of putting a "full court press" on a known incompetent and unrepresented person

warrants a finding bad faith, standing alone.

Clearly, these facts meet the criteria sufficient to get this issue of whether such conduct is

oppressive to be heard by a jury.  There are multiple other fact that support oppression, fraud or

malice, such as requiring Young to file multiple suits as developed *infra*, and incorporated herein

by reference.  Malice is also considered to be present where there is "reckless disregard for the

Plaintiff's rights."  *Phillips v Clark County Sch. Dist.* [33]  Young was treated like he was

dishonest, hiring surveillance on at least two separate occasions in 2007 and 2009.  Young was

forced to undergo not one Examination Under Oath, but two EUO'S. Young was forced to attend

two Independent Medical Examinations, which he did and fully cooperated at every Mercury

demand in addition, Park took Young's deposition in 2010 and again in 2013.

However, Young's general damages of emotional distress and hardship caused by

Mercury's "denial and delay" are still compensable and must be proven by admissible evidence.

NRS 686A.310(2) provides:

> In addition to any rights or remedies available to the Commissioner, and insurer is liable
> to its insured for any damages sustained by the insured as a result of the commission of
> any act set forth in subsection 1 as an unfair practice.

Plaintiff has incurred emotional distress, economic hardship, loss of enjoyment of life,

and coupled with his mental and cognitive impairments, his life as he knew it in 2006 has been

---

[33] *Phillips v Clark County Sch. Dist.* 903 F. Supp. 1094, 1106 (D. Nev. 2012).

irreversibly devastated.  He incurred over $120,000.00 in attorney's fees and approximately $70,000 in costs upon receipt of the payment in 2012 of the $250,000, which are **damages** that could have been avoided.  Thereafter, Mercury forced Young to dismiss the first Federal Court case, even though Judge Mahan denied the Defendant's Motion to Bifurcate, and then caused the California counsel to agree to bifurcate and the re-file the instant case.  These facts clearly demonstrate that Young incurred substantially more in damages, attorney's fees, costs, and frustration, constituting general, special damages and Punitive Damages.

## <u>CONCLUSION</u>

Though this case has lengthy chronology and the case is dense with facts, correspondence, and now seven law suits consisting of over 20,000+ pages of bates numbered documents, the issues and conduct may be distilled down to show factually and with supporting evidence of Mercury's conduct, which is the predicate to Young's factually-neutral allegations of Bad Faith and Violations of the Unfair Claims Practices Act, NRS 696A.310, et seq:

1.  Mercury "misrepresented facts" to Young by withholding the Dix Report and by manipulation of the Merala Report;

2.  Mercury failed to implement reasonable claims processing when they delayed investigation of the claims by failing to conduct a timely and competent investigation.

3.  Mercury failed to affirm or deny coverage of claims within a reasonable time after proof of loss requirements had been completed and submitted by the insured.

4.  Mercury failed to effect prompt, fair and equitable settlements of claims.

5.  Mercury failed to settle the claim promptly, where liability had become reasonably clear.

6.  Mercury failed to provide the insured with a reasonable explanation of the basis of the insurance policy in a timely manner with respect to the fact of the insured claims and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

7.  Mercury breached the Insurance Contract and failed to deal fairly and in good faith.

29

8.   Mercury forced Plaintiff to file multiple law suits.

9.   Young's damages include having to pay substantial attorney's fees as a result of the multiple cases filed, and Attorney's Fees as Damages Young is entitled.

10. Mercury's conduct was oppressive and it demonstrated  a conscious disregard for Young by withholding the Dix Report for 3 ½ years and by manipulating their Auto Recon Expert's report, along with litigating against an unrepresented and legally incompetent insured by seizing every time Young was without legal counsel, Mercury put pressure on Park and Lipp to get Young to come in to meet to try to settle the claim.

Therefore, this court may readily see that this list is not exhaustive, and there are clearly substantial material and disputed facts which prevent this Court from Granting any part of Mercury's Motion for Summary Judgment.

Dated this 24th day of August, 2015.

/s/ Barbara I Johnston
BARBARA I. JOHNSTON, ESQ.
8309 Shad Bush Avenue
Las Vegas, NV  89140
(702) 684-6163; Fax: (702) 541-6743
Barbara.johnston@rocketmail.com
*Attorney for Plaintiff*

30

## CERTIFICATE OF SERVICE

On the 24th day of August, 2015, the undersigned served the following document(s): PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, served the above-named document(s) by the following means to the persons as listed below:

☑ a.   **ECF System** to:

Benjamin J. Carman, Esq.
Hager Dowling
4045 Spencer Street
Las Vegas, Nevada 89119
Telephone: (702) 586-4800
Facsimile: (702) 586-0831
Email: bearman@hdlaw.com
*Attorneys for Defendant, Mercury*
*Casualty Company*

Matthew Q. Callister, Esq.
Callister & Associates
823 Las Vegas Blvd. South, Suite 330
Las Vegas, NV  89101
Telephone:  (702) 385-3343;
Facsimile:  (702) 385-2899
MQC@call-law.com
*Attorney for Plaintiff, David Young*

Barbara I. Johnston, Esq.
Johnston & Associates
8309 Shad Bush Avenue
Las Vegas, NV 89149
Telephone:  (702) 684-6163
Facsimile:  (702) 541-6743
Email: barbara.johnston@rocketmail.com
*Attorney for Plaintiff, David Young*

31