BARBARA I. JOHNSTON, ESQ.
8309 Shad Bush Avenue
Las Vegas, NV 89140
(702) 684-6163; Fax: 541-6743
barbara.johnstone@rocketmail.com
*Attorneys for Plaintiff*

MATTHEW CALLISTER, ESQ.
Callister & Associates
823 Las Vegas Blvd. So., #330
Las Vegas, NV 89101
*Attorneys for Plaintiff*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| DAVID BRIGHAM YOUNG, | CASE NO.:   2:12-CV-00091-RFB-GWF |
| Plaintiff, | |
| vs. | |
| MERCURY CASUALTY COMPANY, | **PLAINTIFF'S REPLY TO MERCURY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendants. | |

Plaintiff, David Brigham Young, by and through his counsel of record, Barbara I. Johnston, Esq., hereby file their PLAINTIFF'S REPLY TO MERCURY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT. The following Reply is based on the Pleadings and Discovery on file in this case, this memorandum of points and authorities herewith, Plaintiff's Declaration, including any documents and/or exhibits attached thereto, and any oral argument this Court may entertain at the time of hearing of this matter.

Dated this 10th day of September, 2015.

_____/BIJ/_____
BARBARA I. JOHNSTON, ESQ.
8309 Shad Bush Avenue
Las Vegas, NV 89140
(702) 684-6163; Fax: 541-6743
barbara.johnstone@rocketmail.com
*Attorney for Plaintiff*

# I.

## PREFACE

Shakespeare wrote in Act III of *Hamlet,* spoken by Queen Gertrude, "the lady doth protest too much, methinks." Mercury is protesting too much about Plaintiff's Motion for Partial Summary Judgment, quantifying content with a quote from a historically ruthless communist, Vladimir Lenin, who died in infamy.  Mercury's personal and pejorative remarks notwithstanding, Young believes that "Mercury doth protest too much".

Mercury inaccurately attempts to persuade this honorable Court that the focus of Young's Motion for Partial Summary Judgment is on Young's conduct, enumerated as Young's "exaggerated" medical bills and treatment, his "feigned head injury", and being a "serial litigator; rather the focus is correctly on the issue, which is **the manner in which the insurer handled the insured's claim, whether or not the claim is denied."[1]**

## II. MEMORANDUM OF POINTS AND AUTHORITIES

### A.   Plaintiff's Response to Defendants Disputed Facts in an Appendix:

Plaintiff's Objections to Mercury's facts in their Opposition to Plaintiff's Motion for Partial Summary Judgment, pp 2 through 5, and including,

**B**. Plaintiff's Objections to Mercury's claimed Undisputed Facts, 44-52, and

**C**. Plaintiff's Objections to Mercury's Evidence matrix [159-1], and,

**D.** Plaintiff's Objections to Mercury's Declarations of Lipp and Merala, all will be in a single Appendix to this Motion.

## III.

## REPLY TO MERCURY'S SECTION ENTITLED "LEGAL ANALYSIS/DISCUSSION"

---

[1] ***Zurich American Ins. Co. v Coeur Rochester, Inc.,*** 720 F. Supp. 2d 1223, (US District court, Nevada, 2010), *Schumacher v State Farm Fire & Cas. Co.* 467 F. Supp.2d 1090, 1095 (D. Nev. 2006**.**

**A.   Standard of Review for Evidence and Procedural Issues:**

It is well-settled in case authority that the standard of review for exclusion of evidence in a summary judgment motion is reviewed for an abuse of discretion.[2]  It follows that we must affirm the district court unless its evidentiary ruling was manifestly erroneous *and* prejudicial.[3]  This standard provides the Court with authority to use discretion when ruing on authentication and admissibility of documents.

"The District Court abuses its discretion if it applies an **incorrect legal standard** to decide an evidentiary issue.  If however, the district court applies the correct legal standard, there is no abuse of discretion unless the district Court's findings of facts, it its application of those findings are Illogical, implausible, or without support or inferences that may be drawn from the facts in the record." [4]

**1.   Mercury claims that Young failed to properly Authenticate "The Bulwark"of his Exhibits.**

Though Mercury did not specifically identify which exhibits Mercury objected to on an evidentiary basis within the context of their Opposition to Plaintiff's Motion for Partial Summary Judgment, but rather attached the same as [159-1], as such, Plaintiff will respond similarly in an Appendix.  It's not lost of Plaintiff that many of the same letters and identical exhibits Mercury objected to were also Exhibits in **their Motion for Summary Judgment** absent declarations or other indicia of competency.

Authentication is a condition precedent to admissibility, and this condition is satisfied by evidence ***sufficient to support a finding that the matter in question is what its proponent claims***.  **However, a proper foundation need not be established through personal**

---

[2] *See Gen. Elec. Co. v Joiner,* 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed. 2d 508 (1997)

[3] *See Id.* at 142, 118 S.Ct. 512; *Maffei v N. Ins. Co.* 12 F.3d 892, 897 (9th Cir. 1993).

[4] *United States v Hinkson,* 585 F.3d 1247, 1251, (9th Cir 2009).

**knowledge <u>but can rest on any manner permitted by Federal Rule of Evidence 901(b) or</u>**

**<u>902 (self-authenticating documents need no extrinsic foundation.)</u>**  Where documents are

otherwise submitted to the court, and where personal knowledge is *not* relied upon to authenticate

the document, the district court ***must consider alternative means of authentication under***

***FRE 901(b)(4).***[5]  In *Las Vegas Sands, Lic. v Nehme, infra,* the District Court excluded the Bennett

letter and its return receipt on the sole ground that those two pieces of evidence must be

authenticated by a competent witness with personal knowledge of their authenticity.  The "Bennett

Letter" was attached to an exhibit to Nehme's Opposition to the Venetian's Motion for Summary

Judgment, and the return-receipt letter was attached as an exhibit to Nehme's cross-motion for

summary judgment.  **Neither was attached as an exhibit to an Affidavit of a person offering**

**his personal knowledge of how the document was prepared** as the basis for the court to find

the document is authentic.  On Appeal to the 9th Circuit, the Court held "that in excluding the

documents, <u>the Court</u> **<u>applied an incorrect legal standard because the Bennett letter and its</u>**

**<u>return receipt could have been authenticated by review of their contents if they appeared to</u>**

**<u>be sufficiently genuine.</u>** *Id.* at p. 534. The court reasoned:

> In this respect, the Bennett letter was dated February 8, 2005, written on the letterhead of
> an attorney who stated he represented Nehme, addressed to Mr. Morcos at the Venetian,
> and printed a reference to the same certified mail number that is on the postal service
> return receipt. ….These characteristics could be sufficient to support a finding that the
> Bennett letter was sent to the Venetian on February 8, 2005, and was received by the
> Venetian on February 11, 2005.

Even with the authority in *Las Vegas Sands, Lic. v Nehme, infra,* Plaintiff's Exhibits have been

authenticated by the attorneys who drafted the letters, as attached hereto.  The letters authored by

Glenn Paternoster, Esq., Exs. 11, 20, 20(a), 33, at attached to Plaintiff's Opposition to Mercury's

Motion for Summary Judgment will be provided with a Declaration in a supplemental exhibit.

Matthew Aaron, Esq.'s Declaration, which is attached to each letter, and is provided herein as Exs.

---

[5] *Las Vegas Sands, Lic. v Nehme,* 632 F.3d 526, 534 (9th Cir. 2011).

1 | 1 –8, and are attached hereto for prior Exhibits 18, 19, 21, 22, 23, 25 and 32 which were objected

2 | to by Mercury, and were attached to Plaintiff's Opposition to Defendant's MSJ.  Marjorie Hauf,

3 | Esq.'s letter, Ex. 22, and re-designated in Plaintiff MSJ as Ex. 35(a), has provided her Declaration,

4 |
5 | (Ex. 9 herein). She specifically requested the Orthopedic IME, but never received it.

6 | **2.    Mercury Argued That Dr. Dix's Report Is Unable to Be Authenticated.**

7 | The reason that Plaintiff could not obtain a Declaration for Dr. Richard Dix' Report was

8 | **exclusively within the control of Mercury**, where this counsel provided Mercury with a

9 | proposed Declaration, and he refused to allow Dr. Dix to sign it, so then I asked Mr. Carman if he

10 | would propose a draft of one he would approve, and he refused to do so, nor did he consider the

11 | Declaration if any objectionable parts were removed, and he again refused. (See Declaration of

12 |
13 | counsel, attached hereto as Ex. 14.)

14 | Nonetheless, while Authentication is a condition precedent to admissibility, this condition

15 | is satisfied by evidence ***sufficient to support a finding that the matter in question is what its***

16 | ***proponent claims***.  **A proper foundation need not be established through personal**

17 | **knowledge <u>but can rest on any manner permitted by Federal Rule of Evidence 901(b) or</u>**

18 | **<u>902 (self-authenticating documents need no extrinsic foundation.)</u>**  Mercury produced the

19 | Dix Report in their List of Expert Witnesses to the Defendants on May 20, 2010!  (Attached

20 |
21 | hereto as Ex. 3 )  Plaintiff argues that since Dr. Dix's Report is attached to Defendant Mercury's

22 | List of Expert Witnesses filed in the 02399 Case [160-14], that the document is what it is purported

23 | to be pursuant to F.R.C.P. 56(c)(1)(A) and (d), by citing to parts of the record, including

24 | documents electronically stored…or other materials, that the document may then be authenticated.

25 | F.R.C.P. 56. Summary Judgment provides additional authority to support factual assertions:

26 | **F.R.C.P. 56. Summary Judgment.**
     | **c. *Procedures*.**
27 | **(1) *Supporting Factual Position.*** A party asserting that a fact cannot be or is genuinely
28 | disputed must support the assertion by:

(A) **citing to particular parts of materials in the record**, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials, or

(B) **showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact.**

(2) *Objection That a Fact is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*Materials Not Cited.* **The Court need consider only the cited materials, but it may consider other materials in the record.**

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters      stated.

(d) ***When Facts are Unavailable to the Nonmovant.*** If a nonmovant shows by  affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) **defer considering the motion or deny it;**

(2) **allow time to obtain affidavits or declarations or to take discovery; or**

(3) **issue any other appropriate order.**

(e) ***Failing to Properly Support or Address a Fact.*** If a party fails to properly support      an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials—including the fact considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

Finally, the Dr. Dix's Report and CV were Defendants bates numbered documents, DEF 03520—03560. **It is Mercury's own document.** The **only reason Mercury seeks to keep it out from this Court's consideration is** because it is **so damaging to their case because they willfully suppressed material evidence from December 1, 2007 through May 20, 2010.** It is axiomatic in law that Mercury should not benefit from their own wrong-doing.

**3.    Mercury argues Richard Cass testimony is "little more than Legal Opinion."**

Mercury summarily concluded that all of Richard Cass' report and deposition testimony are "legal conclusions" or that he relied on inadmissible evidence, but failed to provide any specific examples. Even when turning to Document 159-1, @ p. 17, Mercury simply stated: "Mr. Cass' confusing analysis and material leads to simple conclusion that Mercury misrepresented terms. This is a legal conclusion offered as expert testimony as the legal determination of whether there

was a misrepresentation is subject to the trier of fact." Then, Mercury concluded that "Mr. Cass cites to numerous documents and materials from the claim that were not offered into evidence by the plaintiff." As a primary matter, counsel who took the deposition utilized the preliminary reports, even though Mr. Cass informed her of that fact during the deposition and on the record.

Cass exclusively utilized and reviewed Mercury's Bates stamped documents, and Discovery and referenced them in his report and testimony.  Without any supporting detail or examples, this court is unable to determine what testimony is being object to, and as such, Mr. Cass' Reports, while not admitted for the jury to see, should not be excluded on the basis Mercury attempts to convince this Court is appropriate.

**F.R.E. 702. Testimony by Expert Witnesses.**
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if :
(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) The testimony is based on sufficient facts or data;
(c) The testimony is the product of reliable principles and methods; and
(d) The expert has reliably applied the principles and methods to the facts of the case.

Cass has been qualified as an expert in Nevada eight times, and has had his deposition taken 33 times. (See Declaration of Cass Ex. 11)

**F.R.E.  Bases of an Expert's Opinion Testimony.**
An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Even if Mr. Cass testified in his deposition as to some of the ultimate issues, he is allowed to do so.

**F.R.E. 704. Opinion on an Ultimate Issue.**
(a) *In General. Not automatically Objectionable.*  An opinion is not objectionable just because it embraces an ultimate issue.

The failure of Mercury to cite to specific examples of this allegation, neither this Reply not the Court will be able to consider what specific examples or testimony they are referring to.

**B.  Mercury summarily argues that Young has no breach the contract at issue.**

-6-

1

2

**1. Young's Complaint alleged violation of NRS 686.310, and breach of the Covenant of Good Faith and Fair Dealing arising out of the Mercury contract of insurance.**

3

4

As a preliminary objection, Mercury cited no authority for this argument.  Plaintiff's

5

Complaint [1], contains two causes of action:  First Cause of Action is Violations of Unfair

6

Claims Practices, NRS 686A.310; the Second Cause of Action is for Bad Faith "for denying,

7

without proper cause, the underinsured/uninsured benefits due under the insurance policy"

8

arising out of the contract of insurance, specifically alleging that Mercury Breached the terms

9

of the Insurance Contract.   The two causes of action are factually and legally tied together and

10

the breach of the "good faith and fair dealing" does not arise out of anything but a breach of

11

contract.  Paragraph 31-32 of the Complaint states:

12

13

14

31: "Defendants failed to deal fairly and in good faith with the Plaintiff by denying, without proper cause, the underinsured/uninsured **benefits due under the insurance policy."**
32: As a result of the breach of the implied covenant of good faith and fair dealing, the Plaintiff is entitled to the expectation and consequential damages, including attorney's fees, and emotional distress, incurred as a result of Defendants' unfair claims practices.

15

16

17

This language makes it clear, that the second cause of action arises out of a breach of

18

contract action, i.e., the Mercury Policy of Insurance, because one cannot have a violation of

19

good faith and fair dealing absent a contract as the predicate.   And in any event, the two

20

concepts are dealt with in the same manner—. [6]  Nevada Pattern Jury Instruction, 11FD.5:

21

22

23

24

25

In every insurance contract there is an implied obligation of good faith and fair dealing that neither the insurer nor the insured will do anything to injure the rights of the other party to receive the benefits of the agreement. The relationship of an insured to an insurer is one of special confidence and akin to that of a fiduciary. A fiduciary relationship exists when one had the right to expect trust and confidence in the integrity and fidelity of another. This special relationship exists in part because, as insurers are well aware, consumers contract for insurance to gain protection, peace of mind and security against calamity. To fulfill its implied

26

27

28

---

[6] *Faline v GNLV,* 823 P. 2d 888 (Nev. 1991); *Perry v Jordan,* 900 P.2d 225, (Nev. 1995); *Hilton Hotels Corp v Butch Lewis Production, Inc.*, 808 P.2d 919, (1991).

obligation of good faith and fair dealing, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests.  Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct. *Ainsworth v Combined Ins Co. of Am.* 763 P.2d 673 (1988). *Powers v United Services Auto. Ass'n,* 962 P.2d 596 (1998). *Pemberton v Farmers Ins. Exchange,* 856 P.2d 380, 383,(Nev. 1993.

Finally, the Complaint may conform to the proofs upon a proper and timely Motion to Amend, even up to and during the time of trial.  F.R.C.P. 15(a)(2), *Amended and Supplemental Pleadings. Albert H. Wohlers,& Co. v Bartgis,* 969 P.2d 949 (1999) held that the insurance company's duty of good faith and fair dealing cannot be delegated to anyone.  Therefore, when Mercury retained counsel adverse to Young, the duty of good faith and fair dealing continues into the litigation.

### 2.  Mercury claims that even if Young is allowed to amend his Complaint, Young has "No Damages" arising from Breach of Contract.

*Powers v United Services Auto Ass'n.,* 962 P.2d 596 (Nev. 1998), held:
"[t]hat there was substantial evidence to support the jury's award of special and **compensatory damages based on USAA's breach of the insurance contract, bad faith refusal to pay Powers' claim, and breach of a fiduciary relationship**.  Further, that court upheld the **punitive damages based on the most egregious example of oppression, fraud and malice** (which) is contained in USAA videotape of the newly raised Mikimbi, that USAA had "enhanced" the actual contents of the Mikimbi in an effort to create support for its decision to deny Power's claim and to justify the forwarding of his claim to the ICPI and ultimately to the US Attorney's office.

*Powers, infra,* allowed special damages, compensatory damages, punitive damages, and further, this Court held that **post-judgment interest on the damages claim was allowed,** reasoning: ..."[a]warding post-judgment interest on exemplary damages is consistent with the purpose of post-judgment interest—compensation for the intervening time between entitlement to and actual payment of an award of damages". [7]

In the case of Mercury, Plaintiff believes that Mercury withheld favorable evidence when it refused to disclose the Dr. Dix report from **December 1, 2007 to May 20, 2010.  That is a damage.**  Further, it was clear from the claims diaries as argued more fully in Plaintiff's Motion

---

[7] *Brown v Petrolite Corp.* , 965 F.2d 38, 51 (5th Cir. 1992).

for Summary Judgment, that Mercury put pressure on Jeffrey Lipp and/or Gordon Park to get Merala to change his Automobile Accident Report to "clarify" a fact not ever even addressed in his first Report, to say that Young was more than 50% at fault to justify their handling of the claim. **That is a damage.**

Further, Kelley advised Teresa Wake, Mercury Claims adjuster, that Dr. Dix has attributed 100% of Young's TMJ surgery and his cervical spine surgery to the subject Motor Vehicle Accident of April 13, 2006, and "we need to talk", and then Kelley is summarily never heard from again. (Ex. 35 Pl's MSJ) **That is a damage.**  Even when Marjorie Hauf wrote a letter specifically asking for the Dix Report, it was never sent to her nor was it provided to Mr. Young until over three years later! (Ex. 9 hereto)  Delay and Deny is the theme of Mercury's conduct, coupled with outrageous malicious conduct. The sum total of these acts are "**damages to Young.**"

Also, **Young has sought attorney's fees and costs,** which are also allowed.[8] *Tracey, infra* held that because attorney's fees are considered substantive for *Erie* purposes, *Walsh v Kelly,* 203 F.R.D. 597, 598 (D. Nev. 2001), In re Larry's Apartment, LLC, 249 F.3d 832 (9th Cir. 2001), "A federal court sitting in diversity applies state law in deciding whether to allow attorney's fees."  For breaches of NRS 686A.310, attorney's fees are typically not allowed; however, under a breach of contract or breach of the fiduciary duty, a party can claim attorney fees as special damages.[9]

**Plaintiff has plead attorney's fees as special damages in his Complaint,** and as such, under the authority in *Tracey, infra,* and *Sandy Valley, infra,* Young is entitled to his attorney's fees as special damages. The Interpleader action supports the payments to the various attorneys for legal services rendered, in addition to potential prior counsel's liens on this file.  Further, because costs are considered procedural, not substantive, federal law applies. *Tracey, infra* at p. 16.  Therefore,

---

[8] *Tracey v American Family Mutual Insurance Company,* Case No.:2:09-cv-1257-GMN-PAL, Nev. December 30, 2010

[9] *See Sandy Valley Associates v Sky Ranch Estates Owners Ass'n,* 35 P. 3d 964, 969 (Nev. 2001).

*Tracey, infra,* **allowed costs awarded to the prevailing party pursuant to F.R.C.P. 54(d) and Local Rule 51-1.** Costs are for fees of the clerk, fees for service, fees for transcripts, witness fees and copy charges.  Further, pre-judgment interest for past damages, as well as pre-judgment interest is allowed on costs as part of the judgment.[10] *Gibellini v Klindt,* 885 P.2d 540 (Nev. 1994).  Finally pre-judgment interest on attorney's fees is awarded as an element of Damages.[11]

Lastly, Plaintiff believes that he can make a very compelling case for punitive damages pursuant to *Powers v USAA, infra,* and *Storlie v State Farm Mut. Auto Ins., Co, infra.*  Oppression is a conscious disregard for the rights of others constituting cruel and unjust hardship.  Malice is present in conduct that is intended to injure a person or despicable conduct that is engaged in with a conscious disregard of the rights and safety of others.  N.R.S. 42.005(1).  In *Storlie, infra,* the Court held that Defendant's delay in resolving Plaintiff's claim demonstrated malice, particularly because over $9,000 of the policy was not in dispute and Plaintiffs medical bill had been submitted to collections….the Court reasoned:  a reasonable trier of fact could indeed determine that Defendant's actions and inactions were malicious and oppressive. *Id.* at p 16-17.

     D.    **Mercury claims there is no evidence of Bad Faith.**

Mercury argues that the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer **knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage**.  *Faline v GNLV Corp.* 823 P.2d 283, (Nev. 1991).  Mercury can't escape the hard facts that when Mercury finally decided that it had to pay Young, more than five years had passed[12], and Young was forced to file multiple suits, and then by the time Mercury paid in 2012, Young owed over $160,000 in attorney's fees and costs.  The Claims'

[10] *Albios v Horizon Communities, Inc.,* 132 P.3d 1022, (Nev. 2006).

[11] *Albios v Horizon Communities, Inc.,* 132 P.3d 1022, (Nev. 2006).

[12] The Binding Arbitration Decision was rendered January 27, 2011, and the Interpleader disbursing the funds took another 18 months.

-10-

1  diaries (Exs. "39" and "50" to Pls MSJ), Mercury realized that it was wrong in delaying and

2  denying, so Claims diaries show that they put pressure on Lipp and or Gordon Park to manipulate

3  the auto reconstruction report by "clarifying" something that wasn't even in the first report, getting

4
   Merala to say that  saying that Young was more than 50% at fault.  The problem is that it was then
5
6  2009 by then.  Hence, this court may conclude that perhaps it's murky what Mercury knew and

7  when, but the facts from the diaries reveal "**that there was no reasonable basis for disputing**

8  **coverage (at any time) and that *Mercury recklessly disregarded the actual basis for***

9  ***disputing coverage.*** *See Powers, Faline infra, and Storlie, supra.*

10         In *Storlie v State Farm Mut. Auto Ins. Co.*, Case No. 2:09-cv-02205-GMN-PAL, held:
           In this Case, a reasonable trier of fact could conclude that Defendant's failure to tender any
11         offer during the **ten month span of time between when defendant initially received**
           **notice the Plaintiff might be pursuing an UM cause of action and the time at which**
12         **Plaintiff filed this law suit—January to October**—demonstrated a failure on
           Defendant's part to effectuate the sort of prompt, fair and equitable settlement
13         contemplated in the Unfair Claims Practices Act, particularly when coupled with
           Defendant's failure to pay the undisputed portion of Plaintiff's medical bills even after
14         receiving notification that they had been sold to a collections agency. *Id.* at p. 15.
15
16         In *Storlie,* the Court found Section 686A.310(e) mandates that the insurer effectuate

17  **prompt, fair, and equitable settlement of the insured's claims, and that <u>ten months</u>**

18  **<u>"demonstrated a failure on Defendant's part to effectuate a prompt, fair and equitable</u>**

19
    **<u>settlement</u>** contemplated under the Unfair Claims Practices Act.  This court even noted that it was
20
21  hard to tell which provision of the Act that the Amended Complaint intended to address under the

22  statute, but that in any event, the court reasoned that the defendants had violated the Unfair

23  Claims Practices Act.

24         Mercury argues that "there is no viable cause of action for breach of contract" as Mercury

25  paid the UM benefits, citing *U.S. Fidelity & Guar. C. v Peterson*, 91 Nev. 617, 540 P.2d 1070, (Nev.

26  1975) as their authority. (See attached case, Ex. 12 ).  This case simply does not state the holding

27  advanced by Mercury because Mercury incorribly mis-quotes the holding of the case which is

28  unacceptable advocacy. In fact the case supports Young's position, when it held:

                                                  -11-

**We approve and adopt the rule that allows recovery of consequential damages** where there has been a showing of **bad faith** by the insurer. Where an insurer fails to deal fairly and in good faith with its insured by refusing without proper cause to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for a breach of an implied covenant of good faith and fair dealing. **The duty violated arises not from the terms of the insure contract, but is a duty imposed by law, the violation of which is a tort.** *Id. at p. 1072.*

The first point is that their "authority" is 1975, was at the birth or inception of Insurance Bad Faith in Nevada. Next, this case is two pages, and there is no such quote as reported above, that "**there is no viable cause of action for breach of contract where the insured has already paid the UM benefits.**" In summary, Mercury then tries to convince this Court that Young has no damages arising out of any alleged breach of contract.

Mercury did pay, but not until 2012, six years later, **after there were no fewer than 6 related law suits, and Young incurred approximately $160,000 in attorney's fees and costs which was paid out between all the lawyers! Those attorney's fees and costs are Young's "a damages. The Interpleader action shows that David only received $40,000, and out of that, he had to pay Richard Small, Esq. $7,500 for handling the Interpleader action. (See Ex. 60 Stipulation and Order to Interpleader at attached to Plaintiff's MSJ).**

*Powers v United Services Auto Assn.,* 962 P. 2d 596 (1998) held that there was "substantial evidence to support the jury's award of **special and compensatory damages** based upon USAA's breach of the insurance contract, bad faith refusal to pay Powers' claim, and breach of a fiduciary relationship." Young's complaint seeks Compensatory Damages, Consequential Damages, special damages and attorney's fees and costs, pre and post-judgment interest, as well as Punitive Damages.

Further, *Zurich American Insurance Company v Rochester, Inc.,* 720 F.2d Supp. 1223 (D. Nev. 2010) held that NRS 686A.310, et seq., "**addresses the manner in which an insurer handles an insured's claim whether or not the claim is denied.**"

Mercury's Opposition never addressed any of the following of Plaintiff's Contentions:

-12-

1. Mercury's Opposition never addressed why Young was forced to file no fewer than seven law suits.
2. Mercury never addressed why Mercury withheld the Dr. Richard Dix Report for 3 ½ years, which was favorable to Young.
3. Mercury never denied or addressed why Mercury its evident in the Claims diaries that Mercury indirectly pressured Ray Merala to change his report from an exclusively a biomechanical engineer's report to an apportionment of Liability, which Talas Engineering's first report did not address any liability split—so how could he "clarify" something that was absent in the first report?  That too, is a jury question preventing granting Mercury's Motion for Summary Judgment.
4. Mercury never addressed that Young had established legal entitlement when Young settled with the adverse party, Christopher Schork, and Young had obtained Schork's policy limits of $15,000.00 and signed a release with Progressive—why would Schork settle if he was not at fault?
5. Mercury never addressed the fact that Mercury wrote to Thomas Margarit that "our insured is not legally liable for this accident", and denied payment for any of Margarit's damages.
6. Richard Cass, Plaintiff's bad faith expert, testified in his deposition that the settlement with Schork and the letter to Margarit constituted legal entitlement to benefits.  See Cass Depo excerpts, Ex. 7, pl 57, lines 1-5.
7. Mercury never addressed the severity of Young's damages, exceeding $200,000 within less than two years after the subject accident.
8. Mercury never addressed that when Mercury finally did pay the benefits, it was not until **March 29, 2012**, (Pls MSJ Ex. 61), which was 5 years and 11 months later after the loss.
9. That Mercury made numerous critical omissions in its investigative process, which omissions support a finding of oppression and punitive damages.
10. That Mercury took an intentional course of conduct of hostility and adversarial conduct designed to ensure the denial of Young's claim and that such conduct may constitute fraud and malice, which warrant an award of punitive damages.

    1. **Mercury argues that the "genuine dispute doctrine" precludes a finding of bad faith in favor of Mr. Young.**

In *Pyramid Techs., Inc. v Hartford Cas. Ins. Co.* 752 3d 807, 824-825, (9th Cir. 2014), the 9th Circuit held:

> Whether an insurer's denial of a claim is *unreasonable* is **dependent upon the *facts* in each case**. The issue remains a question of fact **unless only one inference may be drawn from the evidence.** (Cite omitted here.) Summary judgment cannot be granted under the "genuine dispute doctrine" in a bad faith claim **unless it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable**—for example, where even under the Plaintiff's version of the facts--there is a genuine issue as to the insurer's liability under California law.  (Cite omitted here) Pyramid produced evidence from which a reasonable jury could draw more than one inference concerning Hartford's conduct.  **Thus summary judgment against Pyramid's claim for breach of the implied covenant of good faith is inappropriate.**

-13-

As applied to the facts instant case, Plaintiff has objective facts as detailed and provided in his Motion for Summary Judgment and re-asserted herein. The Court may be unable to grant Plaintiff's relief requested in the Motion for Summary Judgment, and if the issue is material, then such is a factual dispute for the jury. However, if the Court may find that Plaintiff's factual evidence is sufficient, Court may conclude that Plaintiff has met that burden and grant summary Judgment as to whether Mercury had a genuine dispute or not. This is not a "weighing of the evidence" as the documents speak for themselves—it evaluating facts and coming to a conclusion.

*Hangarter v Provident Life and Acc. Ins. Co.* 373 F.3d 998 (9th Cir. 2004) held that:

> Though the existence of a "genuine dispute" will generally immunize an insurer from liability, a jury's finding that an insurer's investigation of a claim was biased may preclude a finding that the insurer was engaged in a genuine dispute, even if the insurer advances expert opinions concerning its conduct. *Id. at p. 1010.*
> An insurer's bias may be shown through the following factors:
> 1. The insurer may have misrepresented the nature of the investigatory proceedings;
> 2. The insurer's employees lied in depositions to the insured;
> 3. The insurer dishonestly selected its experts;
> 4. The insurer's experts were unreasonable; or
> 5. The insurer failed to conduct a thorough investigation.
>    *Id. at 1011.*

Mercury rests is case on two components that they say created a "genuine dispute", which is the Arbitration Forums, Inc.'s property damage split, Ray Merala's Report. In the instant case, Teresa Wake required that David Young undergo three IMEs, and an Examination Under Oath. She had in her possession by **March, 2007**, all of Young's medical records from a prior cervical fusion from Dr. Kabins, yet she failed to provide them to Bruce Kelley by September 13, 2007, the date of the first EUO, necessitating Kelley to continue the EUO and conduct yet a second EUO on October 10, 2007. At this point, Mercury was taking an adversarial position with Young, but never disclosed that to him[13] because Mercury never sent a "reservation of rights" letter to their insured. A Reservation of rights letter specifically reserves the right to deny coverage for liability

---

[13] Mercury's adversarial position was finally laid out in Gordon Park's June 8, 2009 letter to Mr. Young, received while Mr. Young was undergoing cognitive retraining in Mt. Sinai Hospital, NY, NY. (Mercury's Ex. AR; Pl's Ex. "16")

1   falling outside of the insured's policy. *Hansen v State Farm Mutual Auto Ins Company, Case* No. 2:10-
2   cv-01434-MMD-RJJ, (Nev. Dec. 2012). Its purpose is to inform the insured that their own
3   company is taking an adversarial position with him. "When an insurer defends under a "reservation
4   of rights…a conflict of interest may arise".  Mercury should have put Mr. Young on notice that
5   Mercury contended that his particular loss may not be covered under the policy", but it never did.
6
7          The fact that Gordon Park had taken such an adversarial role with Young, Mercury had an
8   obligation to inform Young and advise him to retain counsel which at the time Park was involved,
9   the correspondence shows that Young did not have counsel.  In fact, under Mercury's direction,
10  Gordon Park attempted to take advantage of Young by setting up meetings and to try to put
11  pressure on him to settle while he was cognitively impaired and without counsel.  Clearly, for
12  Mercury to require and conduct three IME's, two EUOs, and ultimately conducting a Deposition
13  of Young on October 22, 2010 and another deposition January 8, 2013, the sum of the equation is
14  that Mercury failed to handle the claim promptly and competently.
15
16         It is a jury question whether bad faith is present based on Mercury's protracted adversarial
17  Conduct.  It took until **June 8, 2009** for Mercury for the first time, to inform Young that they
18  believe that he was more than 50% at fault, and that took Mercury three years and three months to
19  do.  Most assuredly, Mercury's pattern of conduct exhibits hostility and adversarial claims handling
20  almost from the start in 2007.  The reasonableness of an insurer's claims-handling conduct is a
21  question of fact. *Hangarter v Provident Life and Acc. Ins. Co.,* 373 F.3d 998 (9th Cir. 2004.)  An insurer
22  is not entitled to a judgment as a matter of law where, viewing the facts in the light most favorable
23  to the plaintiff, a jury could conclude that the insurer acted unreasonably. *Adadeo v Principal Mut.*
24  *Life Ins. Co.,* 290 F.3d 1152, 1161-1162.
25
26         As such, special and compensatory damages are allowed for 1) breach of contract and breach
27  of the covenant of good faith and fair dealing, and breach of fiduciary duty; and  2) punitive
28  damages where it is a jury question as to whether Mercury's conduct supports a finding that

Mercury had been guilty of oppression, fraud or malice, express or implied, pursuant to NRS 42.005.

### 2. Mercury argues that Young expects the Court to rule on credibility of exhibits precluding summary judgment.

**F.R.C.P. 56(c)** *Procedures.* **(1) Supporting Factual Positions,** *et seq.* is laid out more fully *infra, @ p. 11, which* generally provides that the court reviews the evidence, and how to support factual positions.  To that extent, the Court may rule on reliability and authenticity, but Plaintiff does not suggest that the court will also rule on the "credibility" of the evidence as Mercury suggests.

What is interesting about Mercury's argument is that at p. 14, lines 22-23, "for the Court to disagree with Young's position, the Court would have to disagree with Mr. Merala's report."  In that context, it is Mercury who is asking the court to "weigh the evidence".  Clearly, the court is the "gate-keeper" and needs no instruction or enlightenment on how to conduct a trial.

Certainly, a review of Mercury's recently un-redacted Claims diaries show facts tending to lead to the discovery of admissible evidence that Mercury was worried about how they were going to support their continued denial of payment to Young because, because, up to then, all they had was Gordon Park's opinion, letter dated **June 8, 2009,** that Young was greater than 50% at fault. (See Ex. MSJ Pl's Ex. "55") This fact is supported by the Claims' Diary, (Pl's Motion for SJ, Ex. "44", MCF 000041), in pertinent part:

> **Claim Notes on 09/17/08, MCF000041, "DEF opines that should this case proceed to trial, DIV would likely be found over 50% liable, thus barring any UM recovery."**

Then, in **November, 2008,** Mercury **finally** hired an Auto reconstructionist, the biomechanical engineers, to attempt to support Mercury's unreasonable delay and denial.  Ponder the question: **shouldn't this have been a predicate decision prior to delaying and denying?**—rather than last minute "quarterbacking", and creating something to attempt to reconstruct an **excuse, almost 3 years after** "delaying and denying".

-16-

Mercury cites to *Feldman v Allstate, Inc. Co,* 322 F.3d 660, 669 (9th Cir. 2003), that "[a] genuine dispute exists where an insurer reasonably relies on information available to it at the time of a claim decision, including expert opinion." Unfortunately, Mercury's reliance on the Arbitration Forums, Inc. property damage split is improvident and irresponsible, because there is no "due process" to the proceeding, it is basically an informal forum for insurance companies to argue how to share and split in the property damages only. The reliability, competency and authenticity of the documents preclude admissibility at the time of trial—which of course, understandably, the "gate-keeper" makes that ruling, but it's been historical in litigation that the Arbitration Forums, Inc. documents have never been admitted in this counsel's trial experience for the past 25 years, and that these documents and decisions are universally excluded at the time of trial nor are the witnesses ever allowed to testify regarding the same. (Ex. 14 for Counsel's declaration); see also Richard Cass Deposition Testimony, Ex 13, p 240:12-25, p. 241: 1). Mercury failed to address admissibility or authenticity, but moreover, Mercury mis-stated the process by erroneously arguing that the Arb. Forums, Inc. is somehow a "tribunal", requiring a majority opinion ruling, which is not case at all—there were three adjusters representing the respective insurance company, and one arbitrator. There is no showing that any of the three companies request a "tribunal" hearing. *See. Mercury's **Unauthenticated** Exhibits H and W to their MSJ.*

And as to Merala, Plaintiff does not seek credibility rulings, but rather to consider the circumstances surrounding the statements in Mercury's Claims Diaries (Exs. 31, 37, 39, and 44, Pls' MSJ), where a strategic phone call between Merala and "the client" for 30 minutes, and a supplemental report was provided on **May 29, 2009**, with a "clarification" (Ex. 54 to Pls MSJ) saying, "It is my opinion that Mr. Young is more than 50% responsible for this incident, and but for his actions, this accident would not have occurred." He even goes as far as to say the "but for" test, which is a legal conclusion that the Jury makes, not him. In concert with connecting the dots, Merala' supplemental report is now three years after Mercury had continued delaying and denying.

Querry, what did Mercury rely upon as their "basis of a genuine dispute" between **April of 06 and May, 09?** Other inconsistencies abound in Merala's two reports as detailed in Plaintiff's MSJ.

Last observation here is that Merala's Report in Mercury's Motion for Summary Judgment lacks a Declaration of Competency, such that this court should not consider it as support for their Motion for Summary Judgment.  Documents which are not properly authenticated cannot support a summary judgment motion. *Cristobal v Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994).

### 3.   Mercury claims its dispute arose from contested liability.

At the risk of "repeating" supporting evidence, like in the movie, *Ground Hog Day*, the above-referenced Reply, Mercury places unwarranted reliance on an incompetent inner-arbitration decision on a **property damage only** split between three claims adjusters.  Summary Judgement may only be granted or denied on competent evidence.  Schork was insured by Progressive who immediately submitted their property damages to Arbitration Forums, Inc. (AF, Inc.).  AF, Inc. is a forum for participating insurance companies to submit disputed or competing claims for payment of property damages only.  It is well-settled in law and in practice that the split of property damage decision never is admitted into evidence at trial, it cannot and does not replace due process and opportunity to be heard to introduce competent evidence such as a deposition, where both or all sides can affect the outcome.  The process is conducted by insurance companies' agreement to submit property split to an Arbitrator, who is also another claims adjuster.  There were three representatives present, and it was not a "tribunal" as Mercury has improperly argued—that it was likely that of three independent adjusters and one arbitrator. Mercury would have had to request a tribunal, and there is no supporting evidence that it did so.

Then, Mercury attempts to submit an incompetent document, Exs. H and W, in support of its position, documents that cannot be authenticated pursuant to F.R.E. 901 and that Mercury well knows are incompetent and cannot be authenticated at trial.  As such, the documents offer no support for any Motion for Summary Judgment as they are not competent, while using the exhibits

-18-

1   as a sword and a shield. *See Cristobal v Siegel, Id. 1494*.  Simply put, Mercury's reliance on the

2   Arbitration Forums, Inc. documents was improvident as it does not create a "genuine dispute".

3         Last thought on Mercury's non-reliance on Young's medical bills is yet another admission

4   of misplaced reliance.  This is so, because once Mr. Young' bills exceeded $203,000, (See Pls MSJ

5   Ex 6), even if on a slim margin, Young was found to be 50% at fault, he'd likely still recover the

6   entire $250,000, since the excess over $203,000 would be for lost wages and pain and suffering.

7   Further evidence of Mercury's awareness that they should not have waited so long was that in T.

8   Wakes' C-141 in July 2007, (Pl's MSJ Ex. 27), she related that the medical bills were $155,412.10

9   and her reserves was $30,000!  Even Bruce Kelley, Esq., Mercury's then attorney,  informed

10  Mercury that he valued the case at policy limits, as seen in the claims diaries. (Cass Depo Ex. 13,

11  228:9-17). Their argument makes no sense, and so, the Court may conclude that Mercury simply

12  failed to protect their insured, even when they had all the information they needed in the summer

13  and fall of 2007.

14

15

16      **4.  Mercury mischaracterized Young's position on the EUOs.**

17        Mercury was hostile towards Young from late 2006 to early 2007 by its conduct of delay,

18  denial, and unreasonable demands.[14] Their hostility towards Young include two FRASCO

19  surveillance in **August, 2007 and the Claims diaries show that it was repeated in 2009,**

20  **though we did not receive those documents from Mercury.** Mercury's overt hostility and

21  adversarial position taken towards Young, coupled with the attempt to take advantage of him every

22  time-period that he was unrepresented, clearly demonstrates their adversarial position.  The claims

23  diaries overtly detail direction to Jeffrey Lipp, Mercury's Litigation Specialist, to keep a line of

24  contact up and to try to get Young to come in to meet with Gordon Park, to discuss settlement at

25  the time that Mercury felt they were "armed" with sufficient adverse reports to convince Young to

26

27

28

---

[14] The demands culminated into two EUO's, two Depositions, three IME's, all of which Mr. Young cooperated in accomplishing.

buckle under the pressure.  These facts are borne out in the Claims Diaries, Exs. "39", "44", "45",

and "50" to Plaintiff's Motion for Partial Summary Judgment.  Moreover, the correspondence

proves that Mercury never disclosed the favorable Dr. Richard Dix IME and Records' Review

Report for 3 ½ years!  This standing alone is not only hostility but fraud.

### E.   Mercury claims Young has no undisputed material facts in support of violations of NRS 686A.310.

Plaintiff's Complaint in the instant case, filed on **January 19, 2012**, alleges generally,

violations of NRS 686A.310, and a cause of action for common law bad faith. Unlike a cause of

action for bad faith, the provisions of NRS 686A.310 *address the manner in which an insurer*

*handles the claim, whether or not the claim is denied. Zurich Am. Ins. Co. v Coeur Rochester, Inc.*[15]

Plaintiff reincorporates foregoing facts in support of disputed facts related to NRS 686A. 310,

including the following:

#### 1.   Mercury argues that it responded reasonably promptly to Mr. Young.

**NRS 686A.310 (b):  Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.**

The focus of NRS 686 A.310, *et seq. the manner in which an insurer handles an*

*insured's claim, not whether or not the claim is denied.*   *Zurich American Ins. Co. v Coeur*

*Rochester, Inc.*[16]  While Mercury took Young's recorded statement on **April 19, 2006**, (Ex. "9"

Pl's. MSJ), and while Mercury settled with Young on the property damages on or about **May**

**5th, 2006**, (Ex. "10" Pl's. MSJ),   Mercury failed to   conduct a competent and complete

investigation with **"dispatch".**  Initially, Mercury should have taken the recorded statements

from Christopher Schork (who violated Young's right of way), and Thomas Margarit, who was

not at fault at all.  Also, there was a percipient witness, David Colvin, and Mercury never

---

[15] *Zurich American Ins. Co. v Coeur Rochester, Inc.*, 720 F. Supp. 2d. 1223, 1226 (D. Nev. 2010).
[16] *Zurich American Ins. Co. v Coeur Rochester, Inc.*, 720 F. Supp. 2d. 1223, 1226 (D. Nev. 2010).

attempted to locate him until June 26, 2008.   (See Claims Diary, Pl's MSJ Ex. "15").  Schork's

recorded statement was only conducted on **July 30, 2007**, fifteen months after the accident! (See

Pl's MSJ Ex. "14").  The Diary entry shows that  Mr. Margarit was so angry at both Mercury and

Progressive, that the claims diaries show that when he was finally contacted in 2007, he refused

to give his recorded statement.

Mercury failed to competently participate in the Arbitration Forums, Inc. process, which

is informal intercompany process to determine who will pay any property damages.   Finally, in

**December, 2007**, a Mercury supervisor directed Michael Fitzpatrick, claims adjuster, to Petition

as the "Claimant", which by then, was too late for Arbitration Forums to revise their prior

decision, which was that Progressive met its burden of presentation that Young was 60% at

fault and Schork was 40% at fault.  (Pl's MSJ Ex. 19)   Here again is evidence of "delay and

deny" which prejudiced Young.  Further, there is no evidence that Mercury advised Mr. Young

that he had a right to be present at the Arbitration Forums, Inc. or to give any kind of testimony

there.  Mercury failed to be the Claimant until Michael Fitzpatrick was directed to do so late in

2007, some 20 months after the accident!   In any event, the Arbitration Forums, Inc. processes

are not for the division of bodily injury liability split, they are incompetent hearings as the

"deciders" are not judges, or even lawyers, they are other insurance adjusters. (See Pl's. MSJ Ex.

20, AF, Inc. Website Documents)  There are no "under oath statements", no depositions used, no

evidentiary competency, other than an insurance adjuster's rendition of the facts which are not

under oath or Declaration, such that the AF, Inc.'s documents are never Authenticated pursuant

to FRE 901 or NRS 52.015.   As such the Arbitration Forums, Inc.'s decision on property

damages should never be admitted into evidence on the issues of liability or damages at the time

of trial or hearings on the matter. (See Cass Deposition excerpts, p 240:12-25, 241:1, Ex 13).

Facts demonstrating legal entitlement are supported by the following documents:  on **February 22, 2007,** A & P sent Don Walden a letter **(Ex. 1, hereto)**, informing Mercury that Schork's insurer, Progressive, had paid Young $15,000 on **November 15. 2006,** enclosing a copy of the Release and check from Progressive.  **Further the letter informed Mercury that Young has been recommended for a cervical fusion at C4-5.**  Finally and significantly, *Mr. Aaron asked "if there are any conditions or terms that we must initially meet…please inform us immediately".*

Then, **June 29, 2007,** when Aaron & Paternoster made their first Demand Letter, (Ex. 5 herein; Pls. MSJ, Ex. 23) Teresa Wake, then Claims Adjuster, simply wrote that she didn't have enough information and needed a medical authorization, with a list of providers, even though in **March of 2007,** Ms. Wake received Dr. Kabins 2002 forward records.  (Pls. MSJ, Ex. 2, & 24) Additionally, Ms. Wake had been provided an updated list of providers to augment her Medical Authorization signed and provided on **May 11, 2007**.  (Pl's. MSJ Ex. 24)  This is yet another example of delay and deny.

Then mid-2007, Mercury hired Bruce Kelley, Esq. to conduct an EUO, and three IME's. Ultimately, two EUO's went forward, in part because Wake did not provide Kelly documents she had in her possession in March, 2007, which included 2002 Kabin's prior records to Kelly, by the time of the first EUO, which was **September 13, 2007**.  So then Kelley continued the EUO to a month later, **October 11, 2007,** Ms. Wake finally gave the documents she had since March, 2007 to Mr. Kelley.

In fact, the timetable will demonstrate that Mercury never took any depositions until almost 2 years after litigation was initiated in 2009, it never did any competent investigation or questioning of the police officer, Guy Cunningham, nor a percipient witness, David Colvin,  and then threw Mr. Young "under the proverbial bus" in Mr. Park's Arbitration Brief. (See Pl's. MSJ, Ex. 25).  In that Arbitration Brief, it will be shown at trial, Mercury relied upon an

incompetent investigation of Officer Cunningham who testified that he never measure how long Young was in the center two-way turn lane, and then mis-quoted Cunningham's testimony. Clearly, Mercury never conducted a competent, unbiased and fair investigation, much less an investigation "with dispatch". Then, as detailed in the Claim's Diaries, in a desperate attempt to justify what they had done in the past 3 years, in June of 2009, Mercury pressured Merala to "clarify" something in his first report, which was a "detail" clearly absent—and was not "something he wrote that they didn't understand", but rather it was to **ADD SOMETHING that he was never asked to do in the first place....**which was to apportion Mr. Young's liability— that Young was more than 50% at fault.  This is made very clear from the claims diaries. The initial scope of Merala' Report was, as a biomechanical engineer, to factor the Delta V, which is impact speed, and whether the Delva V was high enough to have been able to cause Mr. Young to receive a closed head injury. This demonstrates Mercury's feeble attempt to justify their delay and deny protocol.  It's not about asking this Court to rule now on **credibility** of specific material evidence as Mercury attempt to advance to this Court—it's exclusively about connecting the dots--the Court and the Jury may draw their own conclusions of the facts and what they show.

Then Mercury forced Young to file suit, which was not even required under Nevada Law nor case authority to get a "Judgment".[17]  Thereafter, Mercury removed the State Court case A-539366-C to Federal Court 2:09-cv-02399 JCM-LRL. After Judge Mahan **denied Mercury's Motion to Bifurcate the Bad Faith Action,** (Pls. MSJ Ex. 1 (a) ) Mercury's counsel then convinced California attorneys to Dismiss the current Federal Court case and forced Young to file yet another case (now numbering 7),  for Bad Faith and violations of the Nevada Unfair Claims Practices Act, which is the instant case.  In summary, the significant issue under NRS

---

[17] *Pemberton v Farmers Insurance Exchange*, 109 Nev. 789, 858 P.2d 380, 384.

686A.310 is *the manner in which an insurer handles an insured's claim, not whether or not the claim is denied.*[18]     The Court may allow the jury may deduce that there clearly was an improper handling of the Young's case.

### 2. Mercury claims that Young relies on bare, unsupported assertions regarding violations of NRS 686A.310 (e)

(e) Failing to effect prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

First of all, the case authority says that the insurance company need not have "judgement" before Liability is reasonably clear. *Pemberton v Farmers Insurance Exchange. Id. 384.* It took Mercury from **April 13, 2006** to **January 26, 2011**, nearly five years to finally acknowledge that liability was "**reasonably clear**". But, it wasn't "reasonably clear" before that--it was **"crystal clear before January 26, 2011."** Then Mercury took another nearly 2 more years from **2011 to June 15, 2012** to pay the funds of $250,000 over to the court in an Intervenor Action. (Ex. 60 to Pls MSJ). Clearly and undeniably, it is a Jury Question as to whether now 9 years is reasonable.

Mercury had ample evidence and support that liability had become "**reasonably clear**" in the fall of **2006**, when Progressive, Schork's insurer, paid policy limits to Young. Schork could have sued Young if Young were Young were more at fault than Schork, but Progressive just paid Young and obtained a release against Schork. Further, liability had become "reasonably clear" when Don Walden wrote Thomas Margarit a letter that "our insured, David Young, bears no legal liability for the subject accident". (Pl's MSJ Ex. 9) Cass testified that the letter to Schork is also part of establishing "legal entitlement."(Ex. 13, at 56:14-25, 57:1-5)

Soon thereafter, Mercury was informed that Mr. Young had to have and did undergo TMJ surgery in October, 2006, (Ex. "15" to Pl's MSJ), and in May, 2007, Dr. McNulty did a

---

[18] *Zurich American Ins. Co. v Coeur Rochester, Inc*

cervical fusion, (Ex. "14"attached hereto).   So Young's damages continued to climb, yet

Mercury took an adversarial position, treating Young as though he were an opportunistic third-

party insured. The delay from **April 13, 2006 until mid-2012, six years**, is too long to wait for

UM benefits.   Sadly, because of an excess of $200,000 went for attorney's fees, costs and a

Bridge Loan for living expenses, Young only netted just under $40,000.  The facts don't lie that

Mercury failed to effect a fair and prompt settlement of their insured when liability was

"reasonably clear in the fall of 2007" upon receipt of Dr. Richard Dix's Report attributing the

TJM and the Cervical Fusion 100% caused the subject motor vehicle accident.  (See Pl's.MSJ

Ex. "34" and "65").

> ### 3.  Mercury argues that it provided Young with advantageous dispute resolution in opposition to Plaintiff's NRS 686A.310 (f) Allegation.

> > **NRS 686A.310 §f Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have mad claims for amounts reasonably similar to the amounts ultimately recovered.**

### a)  Mercury's Alleged Advantageous Offers To Meet and Resolve:

Mercury claimed that it provided Mr. Young with Advantageous Dispute Resolution

alternatives before he filed suit.  It took Mercury 3 years and 2 months for Mr. Park to write his

infamous 4 page rhetoric, **raising for the first time that Mercury deems Young to be more at**

**fault than Schork for the subject MVA! (See Pls MSJ Ex 26")  Mercury claims this is their**

**_defense_, that Mr. Park offered Young with Advantageous Dispute Resolution.**  This letter

may have been received at Young's home, but he was in Mt. Sinai Hospital Phase II program in

New York City, NY in a cognitive retraining program.  He had no counsel at that time and he

was incompetent, requiring a guardian *ad litem*, as he now has in the instant case.

### b)  Mercury clearly forced and compelled the filing of multiple law suits:

-25-

In the instant situation, from **April 13, 2006** until the Court Order in the Interpleader action filed on **June 14, 2012,** Mercury had made **no monetary offer whatsoever.**  Because of that, the following law suits have been filed:

> State Court:  **A-517171-C,** (believed to be to adjudicate attorney liens)
> **08-560589-C**, filed and dismissed for technical reasons;
> **09-A-539366-C**, State Court Case where Mercury demanded Binding Arbitration.
> **09-603171-C**, Filed by Mercedes Broughton on behalf of Young; this case was
>                         Dismissed by Motion when Mercury removed Case 539366-C.
> **09-cv-02399** JCM/LRL Fed. Court case after removal of A-539366;
> **11-641139-C** Mercury's Interpleader for the $250,000;
> **2-12-cv-00091** RFB-GWF, current case.

Mercury had all facts necessary to determine liability, when, Christopher Schork's insurer, Progressive, accepted liability, that Schork was more at fault than David Young, and Progressive paid its policy limits to Young on **November 11, 2006**.  (Pl's. MSJ Ex. 10) Additionally, Mercury's adjuster, Don Walden, wrote Thomas Margarit, "paraphrasing" that Mr. Young is not legally liable for Mr. Margarit's injuries or property damages. (Pl's. MSJ Ex. 9).

These two events support the fact that Young had then established Legal Entitlement.  It was unfortunate that this was a major accident, and that Mr. Young was a fragile plaintiff who had a prior injury to his neck, though it was as a different cervical spine level.  However, Mercury took an adversarial position with Young, who was incurring substantial damages with one TMJ surgery in October, 2006 and a discectomy in March, 2007.  Mercury delayed making any offers whatsoever.  Mercury then demanded an Examination Under Oath, which it is well-settled that an EUO is an adversarial proceeding, conducted when the insurance company believes that their insured is being untruthful or dishonest in it presentation of treatment, symptoms and medical bills.  Also Mercury then sought to take three Independent Medical Examinations in the fall of 2007, to which two IME's did go forward, one neuropsychologist, Dr. Ansarow, and one orthopedic surgeon, Dr. Richard Dix. Most assuredly, the delays were caused

by Mercury, where Mercury did not pay Asarnow timely, delaying his report for six months. (Pl's MSJ Ex. 18)

However, on **December 1, 2007,** Dr. Dix provided Mercury with a detailed report of an examination and a records' review from 2002 through 2007.  Dr. Dix rendered the opinion that **all of Young's treatment since April 13, 2006 was directly related to the subject motor vehicle accident, except for the diabetes treatment.**  Dr. Dix offered no opinion on a closed head injury as that was out of his area of expertise.  By December, 2007, Young had around $200,000 in medical bills.  (Pl's MSJ Ex. 6).  Further, Bruce Kelley, Esq. wrote to Teresa Wake on December 5, 2007 that Dr. Dix had related the TMJ and cervical fusion to the subject motor vehicle accident, whereupon Kelley is replaced by Gordon Park, Esq.  (Ex 35 in Pl's MSJ).

Teresa Wake evidently chose to ignore this new information.  Moreover, Mercury did not produce this Report until **May 20, 2010 AFTER** Young had filed suit!  **NRS 686A.310(a) defines "misrepresenting to insured or claimants pertinent facts or insurance policy provisions relating to any coverage at issue,"** _Zurich, infra, @ p. 1237,_ held: "misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue to be an unfair practice."  The deliberate misconduct is clarified when Marjorie Hauf, Esq., specifically requested the Dix Orthopedic evaluation. (Pls. MSJ Ex."34").  That Report was never sent to Ms. Hauf, though she specifically requested it. (See Ex. " ").  Clearly Mercury and their adjusters handled this claim as though Young were not a First Party Insured.  But the undeniably egregious conduct was that Mercury had withheld this report for 3 ½ years after it was provided to Mercury constitutes misrepresentation by omission.

Similar mis-conduct arose when Mercury retained Ray Merala to do an Auto Reconstruction Report in 2007.  Ray Merala is a "Biomechanical" Engineer and the scope of his investigation was to determine the facts of the subject accident and as a **biomechanical**

**engineer**, and he was provided with all of Young's medical records to "**determine whether the subject accident could have caused Young's traumatic brain injury and whether the Delta V impact was forceful sufficiently to cause such a head trauma**".  Merala's first report of **December 8, 2007** did not include any apportionment of liability.  After Young received un-redacted Claims Diaries in May, 2015, the claims adjuster/supervisors pressured both Jeffrey Lipp and/or Gordon Park, Esq. to convince or influence Mr. Merala to **amend his initial report** to include an opinion that Young was greater than 50% at fault. (See Pl's. MSJ Ex. 48 for initial report 12/05/08 and the Supplemental Report, (Pl's. MSJ Ex. 54, dated 05/29/09).  Clearly, the bill (Pl's MSJ Ex. 56), shows there was a 30 minute phone call "with client" on or about May 29, 2009.  So, it was with "client", either Jeffrey Lipp or Gordon Park, both of whom are on Mercury's witness list.  This is yet another violation of NRS 686A.310 *et seq.*

The only conclusion is that Mercury's conduct precipitated the necessity of the various law suits by even failing to offer **any funds whatsoever during the then six year saga**, which is still ongoing today, over 9 years later! Most assuredly, Mr. Park **forced** Young to file suit to obtain a "Judgment" that finally determined that Schork was 66 2/3% at fault.  Then, once Mercury received the Binding Arbitration Decision, then it took them almost 2 more years to pay the funds to the court in an Interpleader Action.  Mercury's conduct was directly responsible for "**compelling the insured to institute litigation**".  Moreover, David only received $40,000 out of the $250,000, with the rest going to fees, costs, and a Bridge loan for $10,000 which turned into $40,000.   The only conclusion a jury could reach is that Mercury's conduct was egregious bad faith in violation of **sub § f**.

   **4.   Mercury claims that it "plainly explained the full basis for the denial of Young's claim.**

   **NRS686A.310 §(n), Failing to *provide promptly* to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the**

**insured's claim and applicable law, for the denial of the claim or for an offer to settle or compromise the claim.**

As laid out more fully *infra*, the theme of the case is **"delay and deny**", which apposite facts *infra*, are fully incorporated herein by reference.  The first time in almost 3 ½ years, that Mercury **finally revealed to Young that they believe that he was greater than 50% at fault was in Gordon Park's June 8, 2009** four page letter, attached hereto as Ex.  (26 in Pl's MSJ) Whether that is reasonable is also another jury question.

However, Mercury's Motion for Summary Judgement ignores the fact that NRS 686A.310(n) requires that Mercury shall **"provide *promptly* provide an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle."**

Additionally, Park's **June 8, 2009** letter shifts the blame of **any delay on Young**, who Mercury knows that Young has had cognitive impairments, and who had a GAL previously assigned by counsel.  Mercury was then taking advantage of the fact that Young now was without counsel in 2008-2009, when Park was pressuring Young, which was directed by Mercury's claims adjuster/supervisors.  See Claims diaries.  (Pl's MSJ Ex. 18, 39)

Further, there is simply no evidence that Mercury ever offered even an insignificant amount to settle.   Mercury had entrenched in its unreasonable position, and any mitigating facts were ignored or buried, as in the case of the Dix Report or influenced as in the case of Merala, and delayed as in non-payment of Dr. Asarnow for his Report for over 6 months.  Here is yet another example of Mercury's delay and deny.

On the facts of the instant case, Mercury waited **six years to file an Interpleader Action**. *(See Ex. 60 in Plaintiff's MSJ).*  In *Storlie v State Farm Mut. Auto Ins. Co.* Case No.: 2-09-cv-022050-GMN-PAL, US District Court, Nevada, (January 14, 2011), held that 10 months was too long for the Defendant (State Farm) to effectuate the sort of prompt, fair and equitable settlement

contemplated in the Unfair Claims Practices Act, particularly when coupled with Defendant's failure to pay the undisputed portion of plaintiff's medical bills even after receiving notification that they and been sold to a collections agency. *Id. p. 14*. It's a jury question as to whether six years is too long, and whether Mercury had any reasonable basis to withhold payment for six years. *Zurich American Ins. Co. v Couer Rochester, Inc.* 720 F. Supp.2d (D. Nev. 2010) held: "Under Nevada law, bad faith is an actual or implied awareness of the absence of a reasonable basis for denying benefits of the insurance policy." The **actual or implied awareness** is a Jury question.

**5.    Mercury claims that Young cannot seek relief outside of NRS686A.310 (b)(e)(f) and (n).**

Young's Complaint [1], emphasizes details of violations of NRS 686A.310 (b)(e)(f) and (n), but under F.R.C.P. Rule, 8, the Complaint and the proofs may encompass other less specific violations of NRS 686A.310, to be addressed at the time the Court hears argument on jury instructions. Simply because Complaint details specific acts under (b)(e)(f) and (n), certainly **does not preclude the inclusion of other acts that may fall under (a) through (p) at the time Jury Instructions are agreed upon by this Court.** NRS 686A.310 addresses *the manner in which an insurer handles an insured's claim whether or not the claim is denied. Zurich American Ins. Co. v Coeur Rochester, Inc.*[19]

**6.    Mercury seeks to blemish Cass' Report.**

Plaintiff's expert, Richard Cass, is a seasoned, well-educated insurance expert. Mercury just didn't like what he said, but more importantly, the Report does not get into evidence for the jury to see. While Cass cited to the statutes and the Nevada Administrative Codes, those are Standards, as he so testified to in his deposition at p. 228:2-25, 229:1-14, See Ex. 13, attached hereto. It's well settled that there is violations of statutory bad faith, there is common law bad faith—i.e., violations of the Fair Claims Practices Act, and breach of the covenant of good faith

-30-

and fair dealing.  Young has plead both aspects of bad faith.  The basis for Mercury's denial may have been on liability, but they were always wrong, and it took the 5 years to get there, and 7 years to pay over the $250,000.  Mercury cites no authority or issue and analysis in the sections 6, i, ii, iii, iv, except for saying that he gave the opinion that Mercury violated the law, which is impermissible legal opinion.  Cass answered direct questions put to him, and called the rules and laws "standards".  (See Ex. 13 @ p 78:1-25, 79:1-22).

### 7. Mercury Sums NRS 686A.310 Arguments as Speculation, argument, and weighs (sic) Evidence.

Mercury's argument seems to be mere criticism without any focus by stating that Young's arguments somehow deal with bad faith and Unfair Claims Practices act, and do not provide justification for summary judgment.  In Section c, @ p. 36, Young argued an Insurer's failure to deal fairly and in good faith with an insured's UM claims is actionable. *Pemberton v Farmers Ins. Exch.*, 858 P.2d 380, 383 (1993).  "To establish a *prima facie* case of bad faith refusal to pay an insurance claim, the plaintiff must establish  that the insurer had **no reasonable basis for disputing coverage and that the insurer knew or recklessly disregard the fact,** and there was no reasonable basis for disputing Coverage.  *Powers, infra.*  Further, Plaintiff argued that it is critical to view the facts to understand what Mercury knew and when it knew it. Mercury never responded to these arguments in their Opposition—particularly, the argument about why the Dix report was buried for 3 ½ years, or that Young was required to file so many suits to get where we are today, this being the 7th law suit, Mercury never responded to the fact that Schork was considered to be #1 At fault driver, that he was cited for violation of Young's right of way.  Mercury never responded to the fact that Arbitration Forums, Inc. documents are for property **damage splits only**, and not on bodily injury apportionment or liability.  Mercury

---

[19] *Zurich American Ins. Co. v Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1226 (D. Nev. 2010).

never responded that its reliance on the only two points, 1) Arbitration Forums, Inc. incompetent

document, and 2) Ray Merala's questionable and suspect Supplemental Report, such that this

court may find the Mercury waived the right to do so now.

### F. Mercury claims there is no basis for punitive damages.

Nevada has long recognized the special relationship between the insurer and its insured. *Ainsworth v Combined Ins. Co.* 763 P.2d 673, 676. (Nev. 1988). Breach of the fiduciary nature of the insurer-insured relationship is part of the duty of good faith and fair dealing. *Powers v USAA, 962 P.2d 596* (Nev. 1998), held "there was substantial evidence that USAA acted in bad faith by denying Powers' claim. In *Powers,* the court held that there was abundant evidence upon which the jury could have found that USAA knew or recklessly disregarded the fact that there was no reasonable basis for denying Powers' claim. Experts in investigations management testified that USAA's investigation was improper, incomplete, poorly done, in violation of USAA's own procedures and rendered the opinion USAA's conduct amounted to bad faith.

> We conclude that the evidence the jury could have believed supported a finding that USAA had been guilty of oppression, fraud or malice, express or implied….A jury could also properly conclude that USAA undertook an intentional course of conduct designed to ensure the denial of Powers claim and that such conduct constituted fraud and malice. *Id.* p. 606.

The question of oppressive conduct is one of fact for the jury to decide. *Buzz Stew, LLC v City of N. Las Vegas, NV*, 131 Nev., Advance Opinion 1, No. 55220 (Supreme Court of State of Nevada, January 29, 2015. Nevada Jury Instruction 11FD.5:

> In every insurance contract, there is an implied obligation of good faith and fair dealing that neither the insurer nor the insured will do anything to injure the rights of the other party to receive the benefits of the agreement.
> The relationship of an insured to an insurer is one of special confidence akin to that of a fiduciary. A fiduciary relationship exists when one has the right to expect trust and confidence in the integrity and fidelity of another. This special relationship exists in party because, as insurers are well aware, consumers contract for insurance to gain protection, peace of mind ad security against calamity.  To fulfill its implied obligation of good faith and fair dealing, an insurer must give at least as much consideration to the interests of the insured as it give to its own interests. Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct. *Ainsworth v Combined Ins. Co. of*

1    *Am.*, 763 P.2d 673, (1988); *Powers v USAA Ass'n*, 962 P.2d 596, 1998); *Albert Wohlers & Co. v*
2    *Bartgis*, 1249 (1998); *Guaranty Nat. Ins. Co. v Potter*, 912 P2d 267 (1996).

3         For purposes of an action brought against an insurer who acts in bad faith regarding it

4    obligations to provide insurance coverage, the definitions set for in NRS 41.001 of "conscious

5    disregard, fraud, malice, and oppression are not applicable and the corresponding provisions  of

6    the common law apply.  *Powers, Guaranty Nat. Ins. Co. , United Fire Ins. Com v McClelland*, 780 P2d

7    193 (1989), *Ainsworth, infra*.  When the breach of the fiduciary relationship occurs, and the conduct

8    is Fraudulent, Oppressive, Malicious and or Despicable Conduct, it is for a jury to so decide.

9
                                       **CONCLUSION**
10
11        In summary, this Court has provided ample authority and competent facts to support

12   granting Plaintiff's Motion for Partial Summary Judgment on the following Issues:

13        Breach of the Contract claim;

14        Breach of the implied covenant of good faith and fair dealing;

15        Violations of the Unfair Claims Practices Act, NRS686A. 310;

16   Young has supported sufficient facts of conduct under common law which warrant damages

17   as plead in his Complaint..

18
19   DATED this 10th day of September, 2015.

20                                        _____/bij/_____
21                                        Barbara I. Johnston, Esq.
                                          8309 Shad Bush Avenue
22                                        Las Vegas, NV. 89149
                                          (702) 684-6163
23                                        Attorney for Plaintiff, David Young

24
25
26
27
28

## CERTIFICATE OF SERVICE

1.    On the 10th day of September, 2015, the undersigned served the following document(s):

    **a.**   PLAINTIFF'S REPLY TO DEFENDANT MERCURY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT;

2.    I served the above-named document(s) by the following means to the persons as listed below:

    ☑ a.   **ECF System** to:

Benjamin J. Carman, Esq.
Hager Dowling
4045 Spencer Street
Las Vegas, Nevada 89119
Telephone: (702) 586-4800
Facsimile: (702) 586-0831
Email: bcarman@hdjlaw.com
***Attorneys for Defendant, Mercury Casualty Company***

Barbara I. Johnston, Esq.
Johnston & Associates
8309 Shad Bush Avenue
Las Vegas, NV 89149
Telephone: (702) 684-6163
Facsimile: (702) 541-6743
Email: barbara.johnston@rocketmail.com
*Attorney for Plaintiff, David Young*

Matthew Callister, Esq.
Callister & Associates
823 Las Vegas Blvd. So., #330
Las Vegas, NV 89101
Email: MQC@call-law.com
*Attorney for Plaintiff, David Young*

                                  /s/ Barbara I. Johnston, Esq.

1

2      **DAVID YOUNG vs MERCURY INSURANCE COMPANY LIST OF EXHIBITS**

3

4      1.   Matthew Aaron's Declaration for attached letter dated February 22, 2007;

5      2.   Matthew Aaron's Declaration for attached letter dated February 27, 2007;

6      3.   Matthew Aaron's Declaration for attached letter dated May 11, 2007;

7      4.   Matthew Aaron's Declaration for attached letter dated May 14, 2007;

8      5.   Matthew Aaron's Declaration for attached letter dated June 29, 2007;

9      6.   Matthew Aaron's Declaration for attached letter dated July 6, 2007;

10     7.   Matthew Aaron's Declaration for attached letter dated August 13, 2007;

11     8.   Matthew Aaron's Declaration for attached letter dated September 14, 2007;

12     9.   Marjorie Hauf's Declaration for attached letter dated January 24, 2008;

13     10. Defendant's List of Expert Witnesses, bates stamped, Dated May 20, 2010.

14     11. Richard Cass, CPCU, RPLU, Plaintiff's Expert's Declaration for his two Reports

15          Dated February 9, 2013, and May 9, 2015.

16     12. Copy of case *United States Fidelity & Guaranty Co. v Peterson;*

17     13. Richard Cass' Deposition Excerpts;

18     14. Declaration of counsel, Barbara I. Johnston;

19     15. *Er Rata* to Patrick McNulty's Exhibit of Deposition Excerpts and attached bills and records.

20

21

22

23

24

25

26

27

28