UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAVID BRIGHAM YOUNG,<br><br>  Plaintiff,<br><br>  v.<br><br>MERCURY CASUALTY COMPANY,<br><br>  Defendants. | Case No. 2:12-cv-00091-RFB-GWF<br><br>**<u>ORDER</u>** |

## I.   INTRODUCTION

This case is before the Court on two motions for summary judgment filed by the parties: Defendant's Motion for Summary Judgment (ECF No. 146) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 148 and 149). For the reasons discussed below, the Court denies Defendant's motion. The Court grants in part and denies in part Plaintiff's motion.

## II.   BACKGROUND

### A. Undisputed Facts

After reviewing the parties' motions and the admissible evidence on file, the Court finds the following facts to be undisputed.

On April 13, 2006, Plaintiff David Brigham Young was involved in an automobile accident on Eastern Avenue in Las Vegas. There were three cars involved in the accident. Young was driving one of the cars; the drivers of the other cars were Christopher Schork and Thomas Margarit. Young was taken from the scene of the accident to the Sunrise Hospital emergency room and was monitored for six hours before being cleared for discharge. Defendant Mercury

Casualty Company ("Mercury") was Young's automobile insurer at the time of the accident, and insured Young with a $250,000 Uninsured/Underinsured Motorist (UIM) policy limit.

On April 17, 2006, Young reported an insurance claim to Mercury arising from the accident. On April 19, 2006, Mercury acknowledged Young's claim and informed him of his policy coverages. Defs.' Mot. Summ. J. Ex. A. ("Mercury Mot."). On April 26, 2006, Young's attorney sent two letters informing Mercury that Young was represented by counsel and requesting coverage information, a copy of Young's recorded statement given to Mercury, and a copy of the property damage appraisal and total loss evaluation report. Id. Ex. B. On April 26, 2006, Mercury responded to these letters informing Young's counsel of the coverages, attaching a medical authorization form for Young to sign, and asking for any documentation from the adverse insurance carrier. Id. Ex. C. Mercury also sent a transcribed copy of Young's recorded statement to Young's counsel on May 3, 2006. Id. Ex. D.

On May 11, 2006, Young's counsel informed Mercury that Progressive Auto Insurance—the provider for Christopher Schork, the second driver in the accident—had determined that Young was 60% at fault for the accident. Young's counsel requested that Mercury defend Young against Progressive's decision. Id. Ex. E.

On May 16, 2006, Young's counsel sent Mercury a copy of Young's signed medical authorization form, as well as bills from Sunrise Hospital in the amount of approximately $6,500. Pl.'s Mot. Summ. J. Ex. 11 ("Young Mot."). On May 24, 2006, Mercury paid Young $5,000 to cover medical payments, thereby exhausting its coverage for medical payments. Mercury Mot. Ex. G.

In July and August of 2006, Progressive filed for inter-company arbitration with Arbitration Forums, Inc. between itself, Mercury, and Farmers Insurance (the provider for Thomas Margarit, the third driver in the accident). Id. Ex. H. The arbitrators reached a decision on October 25, 2007, finding Mercury to be greater than 50% at fault. This decision was received by Mercury on November 13, 2007. Id. Ex. W. On February 21, 2008, Mercury informed Young of the arbitrators' decision and explained that it would not pay him his deductible on his property damage claim as a result of this decision. Id. Ex. AF.

On October 17, 2006, while the arbitrators' decision was still pending, Mercury sent a letter to Thomas Margarit stating that "[o]ur investigation has revealed that [Young] is not legally liable for this accident. In the absence of such liability, we will be unable to make any payment to your client for damages claimed." Young Mot. Ex. 17.

On February 22, 2007, Young's counsel informed Mercury that Progressive (Christopher Schork's insurance provider) had paid its full policy limit of $15,000 to Young to settle the claim and that Young had been recommended for cervical spine fusion surgery as a result of the accident. Mercury Mot. Ex. I. In this letter, Young's counsel also informed Mercury that he would be demanding Mercury's payment of the full UIM policy limit of $250,000 once he had a cost estimate for the surgery. Id. Young's counsel requested that Mercury inform him of "any conditions or terms that we must initially meet under your insured's policy with your company." Id.

On February 27, 2007, Mercury responded to the letter from Mr. Young's counsel. Mercury stated that it had "very little medical documentation in regards to this loss" and requested that Young sign medical and wage authorizations and submit a list of all medical providers whom he had seen in connection with the accident, as well as all physicians who had treated him in the last ten years for injuries to the same body parts. Id. Ex. J.

On March 22, 2007, Young's counsel responded to Mercury and stated that it was attaching a newly signed medical authorization form, a list of prior treating physicians, and proof of Progressive's policy limits for Mr. Schork, as well as copies of medical records and bills in counsel's possession at that time. Young Mot. Ex. 20. On April 30, 2007, Mercury requested that Mr. Young attend an Examination Under Oath (EUO) on May 30, 2007. Id. Ex. 21.

On June 29, 2007, Young's counsel informed Mercury that Young had suffered multiple injuries, the most serious being a cervical spine injury requiring fusion surgery, and officially demanded that Mercury pay the full $250,000 UIM policy limit. Mercury Mot. Ex. M. Young's counsel also included a summary of Young's medical bills to date, totaling $151,542.49. Id.

On July 6, 2007, Mercury's counsel wrote to Young's counsel and stated that Mercury was requesting three Independent Medical Examinations (IMEs). The IMEs were to examine

alleged injuries to Young's jaw, brain, and back. Id. Ex. N. On July 11, 2007, Mercury informed Young's counsel that Mercury was "not in a position to accept or reject your demand [for UIM benefits] as our investigation is incomplete." Id. Ex. O. Mercury stated that it had requested Mr. Young's medical records and that it needed to obtain an EUO and IMEs of Mr. Young. Id. Young's EUO was conducted in two parts on September 13, 2007 and October 11, 2007. Young Mot. Ex. 7, 29.

On July 30, 2007, Mercury took Christopher Schork's recorded statement. Mr. Schork blamed Young for the accident. Mercury Mot. Ex. S. On October 4, 2007, Mercury attempted to contact Thomas Margarit, but he refused to speak with them. Mercury Mot. Ex. T.

On October 24, 2007, Young participated in his first IME with Dr. Richard Dix, M.D., an orthopedist. On December 1, 2007, Dr. Dix issued his report from the IME to Mercury. Young Mot. Ex. 34. Dr. Dix concluded that the proximate cause of Young's neck and jaw pain was the accident on April 13, 2006. Young received surgery for his jaw pain. Id.

On December 5, 2007, counsel for Mercury wrote to Mercury's claims representative, informing her that he believed Mercury should ask Young to submit to a second IME focused on his claimed neuropsychological issues. Young Mot. Ex. 35. On January 3, January 25, and February 19, 2008, Mercury attempted to contact Young (who was without counsel at this point) to schedule an IME with a neuropsychologist. Mercury Mot. Ex. Y.

On March 24-25, 2008, Young participated in his second IME with Dr. Robert Asarnow, Ph.D., a neuropsychologist. On August 5, 2008, Dr. Asarnow issued his report from the IME to Mercury. Young Mot. Ex. 42. Dr. Asarnow concluded that "Mr. Young is not currently suffering from clinically significant cognitive impairments as a result of the April 13, 2006 motor vehicle accident. He does report headaches and neck pain that are outside of my field of expertise to evaluate." Id.

On August 27, 2008, Mercury informed Young that it had received the final report and billing from Dr. Asarnow, and that Mercury's counsel would produce a report based on his review of the IME documentation "within the next few days." Mercury Mot. Ex. AH. Mercury also stated it would be ready to discuss its evaluation of Young's claim within 30 days. Id.

On November 12, 2008, Mercury informed Young that it had decided to hire an accident reconstructionist from Talas Engineering as "the final component to our investigation." Id. Ex. AI. On November 24, 2008, Young wrote to Mercury to ask why Mercury required more time to investigate his claim. Young also requested a copy of Dr. Asarnow's report and his entire claims file. Id. Ex. AJ.

On December 5, 2008, Mercury received a report from Ray Merala, an accident reconstructionist with Talas Engineering. Mercury Mot. Ex. AL. Merala concluded that the collisions Young sustained in his accident were not likely to have caused a significant brain injury to Young. Id. Merala also stated that Mr. Young's inappropriate use of a turn lane as a through lane was a "significant factor" in the events leading to the accident. Id. On December 8, 2008, Mercury sent Merala's report to Young and explained that Young's claim was "not a simple one, neither from a liability standpoint nor from a causation of injury standpoint." Young Mot. Ex. 49. Mercury also told Young that it would like to meet with him and Mercury's counsel to discuss Young's claim in detail. Id.

On January 17, 2009, Young contacted Mercury and asked if the meeting was optional and whether he would be allowed to view the claim file. Mercury Mot. Ex. AN. On February 3, 2009, Mercury responded to Young, informing him that the meeting was optional and declining his request to view the claim file. Id. Ex. AO.

On March 31, 2009, Mercury's counsel wrote to Young, stating that Young had not agreed to meet with them and offering to participate in non-binding mediation with Young, at Mercury's expense. Id. Ex. AP. From April to November of 2009, Young was living in New York and receiving treatment at Mt. Sinai Hospital for cognitive difficulties. During this time, he did not receive mail from Mercury because all of his mail was being forwarded to his father. Dep. of David Young 71-72, 183:2-19, Young Mot. Ex. 53.

On May 29, 2009, Merala wrote a letter to Mercury supplementing his original report. In the letter, Merala opined that Young was more than 50% responsible for the accident and that Young's actions were the primary cause of the accident. Id. ex. AQ.

On June 8, 2009, Mercury notified Young that it was denying his claim based on its determination that Young was more than 50% at fault for the accident. Id. Ex. AR. Mercury also offered to submit the matter to arbitration, which would be binding upon Mercury but not Young. Id. Finally, Mercury advised Young that it would be closing its file if it did not hear from him by July 8, 2009. Id. Young did not respond to Mercury's letter, and Mercury subsequently closed his file.

Young filed a bad faith suit against Mercury on November 12, 2009. Young and Mercury agreed to dismiss the bad faith suit without prejudice and arbitrate the issue of Young's liability for the accident. The arbitrator determined that Young was 33% at fault for the accident, and Mercury subsequently paid the policy limit of $250,000.

### B. Procedural History

Young filed his Complaint against Mercury on January 19, 2012. ECF No. 1. His Complaint listed two causes of action: (1) Violation of Nevada's Unfair Claims Practices Act (UCPA), N.R.S. 686A.310(b), (e), (f), and (n); and (2) Bad Faith. Discovery was conducted and initially closed on August 7, 2013. ECF No. 51. On February 12, 2015, the Court granted Mr. Young's motion to reconsider a previous order denying Mr. Young's motion to reopen discovery. ECF No. 112. The Court reopened discovery on a limited basis for a 60-day period and denied Mercury's pending motion for summary judgment without prejudice. ECF No. 112.

The parties conducted additional depositions and submitted new motions for summary judgment on July 14, 2015. ECF Nos. 146, 148, 149. The Court held a hearing and oral argument on the motions on February 4, 2016, after which it took the motions under submission. ECF No. 173. On March 30, 2016, the Court denied Mercury's Motion for Summary Judgment and granted Young's Motions for Summary Judgment in part and denied them in part. ECF No. 181. This Order represents the Court's reasoning for its rulings on the summary judgment motions. As the Court stated at the February 4, 2016 hearing, although Young appears to have submitted two separate Motions for Summary Judgment (ECF Nos. 148 and 149), the Court's review indicates

1  that these are actually the same motion. Accordingly, the Court will treat these as one motion in
2  the interest of efficiency.

### III.  LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

"When the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir. 2008).

Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If it fails to carry this initial burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Id. at 1102-03. If the movant has carried its initial burden, "the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal

quotation marks omitted). However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

## IV.  DISCUSSION

After reviewing the parties' briefs and exhibits, the Court concludes that summary judgment must be denied on Young's claims for bad faith and breach of Nevada's UCPA, with one exception: summary judgment is granted in favor of Young on his claim for violation of subsection (f) of the UCPA. The Court also concludes that the jury may consider awarding punitive damages on Young's bad faith claim and on his UCPA claim with respect to subsections (e) and (f).

### A.  Claims Not Pled in Young's Complaint

As a preliminary matter, the Court finds that Young may not argue for summary judgment on claims for breach of contract claim or UCPA violations that were not pled in his Complaint. Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (internal quotation marks omitted). Here, Young's Complaint only included claims for bad faith and violations of the UCPA under subsections (b), (e), (f), and (n). In his motion for summary judgment, however, Young argues that Mercury is liable for breach of contract and for violations of subsections (c) and (g) of the UCPA. Young's attempts to assert additional claims at summary judgment do not provide Mercury fair notice of those claims, and the deadline to amend pleadings has long since passed. The Court declines to consider these additional claims at this stage. See Pickern v. Pier 1 Imports, Inc., 457 F.3d 963, 968-69 (9th Cir. 2006); Free v. Bland, 369 U.S. 663, 671 (1962).

### B.  Authentication of Evidence

Mercury argues that the bulk of Young's evidence has not been properly authenticated

1 and is inadmissible. The Court agrees that Young failed to authenticate the evidence attached to
2 his Motion for Summary Judgment. In his reply, however, Mr. Young included declarations from
3 the attorneys who had personal knowledge of the documents submitted. Further, all of the
4 documents produced by Mercury in discovery are admissible, as they were produced during
5 discovery and Mercury has not actually disputed their authenticity. See Maljack Prods., Inc. v.
6 GoodTimes Home Video Corp., 81 F.3d 881, 889 n.12 (9th Cir. 1996) (holding that the district
7 court did not err in admitting documents where the opposing party produced the documents and
8 did not contest their authenticity). Therefore, the Court will consider the documents submitted by
9 Young in his Motion for Summary Judgment.

10 However, the Court will not consider the letter from Marjorie Hauf to Mercury's counsel,
11 dated January 24, 2008, for the fact that it was sent to Mercury. Young Mot. Ex. 35a. Ms. Hauf's
12 declaration attached to Young's reply states only that she drafted the letter, not that she sent it to
13 Mercury. The Court will thus consider the letter for the fact it was written by Mr. Young's
14 counsel at the time, but not for the fact that its contents were actually communicated to Mercury.

**C. Unfair Claims Practices—N.R.S. 686A.310(1)**

The Court finds that both parties' summary judgment motions must be denied as to Young's claims for violations of Nevada's UCPA, except for subsection (f), which is granted in favor of Young.

*1. Applicable Law*

"In Nevada, insurance contracts are directly regulated by statutes which prohibit deceptive advertising and other unfair trade practices." Ainsworth v. Combined Ins. Co. of Am., 763 P.2d 673, 676 n. 1 (Nev. 1988). Nevada's UCPA gives insured individuals a private right of action against their insurers "for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 [of the Act] as an unfair practice." N.R.S. 686A.310(2).

As relevant to this action, "[e]ngaging in any of the following activities is considered to be an unfair practice:

(b) "Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

. . .

(e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

. . .

(f) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered[; and]

. . .

(n) Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

N.R.S. 686A.310(1).

### 2. *Summary Judgment Is Denied on UCPA Subsections (b), (e), and (n) and Granted in Favor of Young on UCPA Subsection (f)*

Based on its review of the parties' briefs and exhibits, the Court finds that summary judgment must be denied as to Young's claims for violation of subsections (b), (e), and (n) of the UPCA. Summary judgment is granted in favor of Young with respect to subsection (f).

i. Subsection (b)

Subsection (b) of the UCPA classifies "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies" as an unfair claims practice. Nevada case law does not define the term "reasonably promptly." However, the Nevada Administrative Code provides some guidance: "Each insurer shall complete an investigation of each claim within 30 days after receiving notice of the claim, unless the investigation cannot reasonably be completed within that time." N.A.C. 686A.670.

Here, the evidence in the record shows that Young's counsel first alerted Mercury that Young would be demanding UIM coverage on February 22, 2007 and officially demanded such coverage on June 29, 2007. In response, Mercury contacted Young's counsel on April 30, 2007 to schedule an EUO, which was not completed until October 11, 2007. Mercury also made a

request on July 6, 2007 that Young participate in IMEs. One IME was completed on October 23, 2007, and the second was completed on March 25, 2008.

The evidence in the record demonstrates that Mercury's response to each individual communication from Young was reasonably prompt. However, the statute also states that insurers must not only acknowledge, but *act upon* claims communications from insureds in a reasonably prompt manner.

Here, using the Nevada Administrative Code's 30-day time frame as helpful guidance, the Court concludes that a reasonable juror could find that Mercury did not act reasonably promptly upon Young's communications notifying Mercury of his UIM demand. On the other hand, a reasonable juror could also determine, based on the complexity of this case and the promptness of Mercury's responses to each of Young's individual communications, that Mercury did in fact act reasonably promptly upon his communications. Therefore, the Court denies both parties' motions for summary judgment with respect to this subclaim.

ii. Subsection (e)

Subsection (e) defines "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear" as an unfair claims practice. There is no evidence that Mercury made any offers to settle Young's UIM claim whatsoever. Therefore, the question is whether Mercury's liability was "reasonably clear" at any point after Young demanded payment of his UIM policy limit.

On October 17, 2006, Mercury sent a letter to Thomas Margarit, the third driver in the accident, stating that "[o]ur investigation has revealed that [Young] is not legally liable for this accident. In the absence of such liability, we will be unable to make any payment to your client for damages claimed." Further, on February 22, 2007, Mercury was informed that Progressive had paid its full policy limit of $15,000 to Young to settle the claim, and that Young had been recommended for cervical spine fusion surgery as a result of the accident and that he would be requesting UIM coverage. Young formally demanded UIM coverage on June 29, 2007, and produced evidence that he had incurred more than $150,000 in medical bills up to that point.

1  Based on this evidence, a reasonable juror could find that Mercury's liability under its
2  UIM policy was "reasonably clear" when Young demanded UIM coverage on June 29, 2007 and
3  that Mercury's failure to attempt to effectuate a fair, prompt, and equitable settlement of Mr.
4  Young's claim violated the UCPA. However, because Mercury's investigation was ongoing and
5  its assessment of Young's liability continued to change as it gathered evidence, a reasonable
6  juror could also find that Mercury's liability was not "reasonably clear" until the results of the
7  arbitration between Mercury and Young, at which point it paid the policy limit. Therefore, the
8  Court denies both parties' motions for summary judgment on this subclaim.

### iii. Subsection (f)

Subsection (f) prohibits "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered."

Here, the undisputed evidence shows that Young's counsel made demand for the full $250,000 amount in a letter to Mercury on June 29, 2007, Mercury denied his claim in July 2009, and Young subsequently received his full $250,000 UIM policy limit from Mercury following arbitration. Mercury has not produced any evidence that it offered any amount at all to settle Young's UIM claim, let alone an amount that was not "substantially less" than the $250,000 that was ultimately recovered. Even construing the facts in the light most favorable to Mercury, no reasonable juror could find that Mercury did not compel Young to institute litigation to recover his UIM payment and that Mercury offered substantially less (in this case, nothing) than the amount ultimately recovered.

Mercury argues that it offered Young several avenues of alternative dispute resolution, such as mediation and arbitration that was binding on Mercury but nonbinding on Young. But the UCPA does not allow insurers to escape liability under subsection (f) by offering alternative dispute resolution mechanisms. Rather, the statute clearly states that insurers violate the subsection if they compel insureds to institute litigation "by offering substantially less than the

1  amounts ultimately recovered . . . ." This argument is therefore unavailing, and the Court grants
2  summary judgment in Young's favor on this part of his UCPA claim.

         iv. Subsection (n)

  Under subsection (n) of the UPCA, insurers may not fail to "provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim."

  Here, the evidence shows that Mercury officially denied Young's claim on July 8, 2009 when it closed its file. The last communication from Mercury to Young in connection with this claim was made on June 8, 2009, when Mercury advised Young that Nevada prohibits recovery for insureds who are more than 50% at fault for an accident. Neither this communication nor the ones before it, however, states the specific provision in Young's policy under which his claim was denied. Although no Nevada case has interpreted this provision in this context, the Nevada Administrative Code provides that "[n]o insurer may deny a claim on the grounds of a specific policy provision, condition or exclusion unless reference to that provision, condition or exclusion is included in the denial." N.A.C. 686A.675. While this regulation is not binding, it does provide guidance as to what a jury might consider to be a "reasonable explanation of the basis in the insurance policy" for the denial, as required by the UCPA.

  Based upon this evidence, a reasonable juror could find that Mercury's explanation for its denial of Young's claim was not reasonable with respect to the facts of Young's claim and the applicable law. A reasonable juror could also conclude, however, that Mercury's explanation of the basis for its denial was reasonable given that it was based on Nevada law regarding when an insured may recover. The Court therefore denies summary judgment on this subclaim.

**D. Bad Faith**

  Young's second claim is for bad faith. Based on its review of the record and the controlling law, the Court finds that summary judgment must be denied on this claim.

### 1. *Applicable Law*

"The relationship of an insured to an insurer is one of special confidence. A consumer buys insurance for security, protection, and peace of mind. While an insured assumes various duties under an insurance contract—such as the timely payment of premiums—the insurer assumes the concomitant duty to negotiate with its insureds in good faith and to deal with them fairly." Albert H. Wohlers & Co. v. Bartgis, 969 P.2d 949, 956 (Nev. 1998), as amended (Feb. 19, 1999) (quoting Ainsworth v. Combined Insurance Co., 763 P.2d 673, 676 (Nev. 1988)).

Under Nevada law, an implied covenant of good faith and fair dealing exists in every contract. Pemberton v. Farmers Ins. Exch., 858 P.2d 380, 382 (Nev. 1993). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 808 P.2d 919, 923 (Nev. 1991). In the insurance context, "[b]ad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." Guaranty Nat'l Ins. Co. v. Potter, 912 P.2d 267, 272 (Nev. 1996). In order to establish a bad faith claim, the insured must establish fault by the insurer and damages. Pemberton v. Farmers Ins. Exchange, 858 P.2d 380, 384 (Nev. 1993). "[A] jury question on insurer's bad faith arises when relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of insurer's conduct." United Fire Ins. Co. v. McClelland, 780 P.2d 193, 197 (Nev. 1989).

### 2. *Summary Judgment Is Denied on Young's Bad Faith Claims*

Here, the Court finds that summary judgment must be denied on Mr. Young's bad faith claim. The evidence in the record demonstrates that Mercury was on notice of Young's intention to seek UIM coverage on February 22, 2007 and received an official demand for UIM payment on June 29, 2007. Mercury then informed Young of its intention to seek IMEs a week later, but did not attempt to schedule the first IME until October of 2007. Mercury also did not conduct any interviews or take any recorded statements of the other drivers in the accident until July 30, 2007. Further, Mercury did not even attempt to schedule the second IME with Dr. Asarnow until after it received the report from Dr. Dix on the first IME on December 1, 2007, which stated that

Young's neck and jaw injuries were related to the accident. The second IME with Dr. Asarnow was not completed until March 25, 2008, and his report was not completed until more than four months after that. Moreover, it was not until June 26, 2008 that a Mercury representative attempted to get a copy of the statement made by Mr. Colvin, a known witness to the accident. Young Mot. Ex. 37. Finally, Mercury did not hire the accident reconstructionist until November 12, 2008, well over a year after Young's initial demand for UIM coverage. Based on these undisputed facts, construed in the light most favorable to Young, a reasonable juror could find that Mercury acted unreasonably throughout its investigation.

A reasonable juror could also conclude that Mercury knew it had no reasonable basis for its actions. Mercury decided to conduct a second IME only *after* it received the results from the first one—results that were unfavorable to Mercury. Mercury also delayed over a year in hiring an accident reconstructionist to opine as to whether Mr. Young's injuries could have been caused by the accident and whether his speed or the fact that he was driving in the center lane had anything to do with his injuries.

On the other hand, these facts also permit the conclusion that Mercury *did* act reasonably. There is evidence in the record that some of the delays in Mercury's investigation were at Young's request, and a reasonable juror could find that Mercury conducted the IMEs and accident reconstruction investigations sequentially not out of bad faith, but rather to save costs and avoid unnecessarily hiring experts.

As these facts permit differing inferences by the jury as to the reasonableness of Mercury's conduct, the Court denies summary judgment on Mr. Young's bad faith claim.

### E. Punitive Damages

Finally, the Court finds that the issue of punitive damages may go to the jury with respect to Young's bad faith claim and subsections (e) and (f) of his UCPA claim.

#### 1. Applicable Law

Under Nevada law, a district court "has discretion to determine whether the defendant's conduct merits punitive damages as a matter of law." Bongiovi v. Sullivan, 138 P.3d 433, 451

(Nev. 2006). "Once the district court makes a threshold determination that a defendant's conduct is subject to this form of civil punishment, the decision to award punitive damages rests entirely within the jury's discretion." Countrywide Home Loans, Inc. v. Thitchener, 192 P.3d 243, 252-53 (Nev. 2008). If the court makes such a threshold determination, "the trier of fact who determines the amount of punitive damages to be awarded must also make the initial determination of whether punitive damages are warranted." D.R. Horton, Inc. v. Betsinger, 335 P.3d 1230, 1233 (Nev. 2014) (citing N.R.S. 42.005(3)).

"A plaintiff is never entitled to punitive damages. Instead, punitive damages may be awarded when the plaintiff proves by clear and convincing evidence that the defendant is 'guilty of oppression, fraud or malice, express or implied.'" Bongiovi, 138 P.3d at 451 (quoting N.R.S. 42.005(1)). "Oppression means despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person." Id. "Fraud means an intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his rights or property or to otherwise injure another person." Id. "Malice, express or implied" means "conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." N.R.S. 42.001(3). "Conscious disregard," in turn, means "the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." N.R.S. 42.001(1). "Under N.R.S. 42.001, implied malice is a discrete basis for assessing punitive damages where conscious disregard can be demonstrated." Countrywide, 192 P.3d at 254-55. The Nevada Supreme Court has held that the "conscious disregard" standard "plainly requires evidence that a defendant acted with a culpable state of mind," and therefore "denotes conduct that, at a minimum, must exceed mere recklessness or gross negligence." Id. at 255.

### 2. The Jury May Consider Punitive Damages With Respect to Bad Faith and UCPA Subsections (e) and (f)

In this case, the Court finds that the issue of whether to award punitive damages is one that may go to the jury on Young's bad faith claim and subsections (e) and (f) of his UCPA

claims. The facts in this case demonstrate that Mercury was aware of Young's formal UIM demand in June of 2009, yet did not conduct its first medical exam until October 2009. Then, after receiving the report from that IME stating that Young's neck and jaw injuries (for which he received surgery and incurred significant medical bills) were related to the accident, Mercury decided to conduct another IME and hire an accident reconstructionist.

Drawing all reasonable inferences in Young's favor, a reasonable juror could find by clear and convincing evidence that Mercury's conduct was despicable and that it was engaged in with conscious disregard of Young's rights. This conduct, however, does not relate at all to subsection (b) (failing to acknowledge and act reasonably promptly on communications with the insured) or subsection (n) (failing to promptly provide a reasonable explanation for the basis in the insurance policy for denying the claim). Therefore, the jury may consider awarding punitive damages only on subsections (e) and (f) of Young's UCPA claim and on his bad faith claim.

### F. Damages Recoverable Under the UCPA

Lastly, the parties dispute whether Young may recover damages from his injuries or attorney's fees for violations of Nevada's UCPA. The Court finds that if Young seeks to recover damages in connection with his UCPA claims, he must establish a causal link between Mercury's actions with respect to violating the UCPA and the damages he suffered from those actions. The Court also finds that attorney's fees are recoverable after trial under N.R.S. 18.010, but not the UCPA, if Mr. Young meets the requirements for recovering those fees.

#### 1. Damages Recoverable Under the UCPA

Nevada's UCPA states that "an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice." N.R.S. 686A.310(2). Subsection (1) of the UCPA lists unfair claims practices by insurers. Neither it nor any other provision in the UCPA is directed toward regulating, or permitting the recovery of damages from, third-party tortfeasors. The Court therefore finds that if Young prevails on any of his UCPA claims, the damages he is permitted to recover under those claims are limited to the damages that arise from Mercury's actions taken in violation of the

UCPA (in addition to any punitive damages that may be awarded). These damages do not include injuries that may have been caused by third parties.

### 2. *Attorney's Fees*

Federal courts sitting in diversity apply state law when deciding whether to permit attorney's fees "when those fees are connected to the substance of the case." In re Larry's Apartment, LLC, 249 F.3d 832, 838 (9th Cir. 2001) (internal quotation marks omitted). In Nevada, attorney's fees cannot be recovered unless authorized by agreement or by statute or rule. Young v. Nev. Title Co., 744 P.2d 902, 905 (Nev. 1987). "Procedurally, when parties seek attorney fees as a cost of litigation, documentary evidence of the fees is presented to the trial court, generally in a post-trial motion." Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n, 35 P.3d 964, 969 (Nev. 2001), receded from on different grounds by Horgan v. Felton, 170 P.3d 982 (Nev. 2007). N.R.S. 18.010 provides for attorney's fees to a prevailing party "when the court finds that the . . . defense of the opposing party was brought or maintained without reasonable ground or to harass the prevailing party. The court shall liberally construe the provisions of this paragraph in favor of awarding attorney's fees in all appropriate situations." N.R.S. 18.010(2)(b).

Based on its review of the applicable law, the Court finds that if Young prevails on any of his claims, he may seek attorney's fees in a post-trial motion as set forth in N.R.S. 18.010. However, Young has not shown, and the Court does not find, that Nevada's UCPA itself provides for attorney's fees. Although the statute authorizes recovery for "any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice," N.R.S. 686A.310(2), the statute does not authorize recovery for fees, costs, penalties, or any other categories that would suggest that attorney's fees are recoverable. Cf. Clausen v. M/V New Carissa, 339 F.3d 1049, 1062 (9th Cir. 2003) (finding that reasonable attorney's fees were recoverable under the Oregon Oil Spill Act, Or. Rev. Stat. § 468B.300, where "damages" was defined in the act to include "damages, costs, losses, penalties or attorney fees of any kind for which liability may exist under the laws of this state . . ."). The UCPA therefore does not

serve as a separate vehicle for recovery of attorney's fees. Young may recover attorney's fees under N.R.S. 18.010, provided he meets the requirements of that statute.

## V.     CONCLUSION

For the reasons discussed above,

**IT IS ORDERED** that Defendant Mercury Casualty Company's Motion for Summary Judgment (ECF No. 146) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff David B. Young's Motions for Summary Judgment (ECF Nos. 148 and 149) are GRANTED IN PART and DENIED IN PART. Summary judgment is granted in favor of Plaintiff on his claim for violation of N.R.S. 686A.310(f), and DENIED as to all other claims.

**IT IS FURTHER ORDERED** that the jury may consider an award of punitive damages with respect to Plaintiff's claims for bad faith and for violation of N.R.S. 686A.310(e) and (f).

**DATED**: July 29, 2016.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**