UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DAVID BRIGHAM YOUNG,

Plaintiff,

v.

MERCURY CASUALTY COMPANY,

Defendant.

Case No. 2:12-cv-00091-RFB-GWF

**ORDER**

### I. INTRODUCTION

Before the Court are two motions: Defendant Mercury Casualty Company's Motion for Attorneys' Fees, ECF No. 423, and Plaintiff David Brigham Young's Motion for a New Trial Pursuant to Federal Rule of Civil Procedure 59(a), ECF No. 429.

### II. PROCEDURAL BACKGROUND

This matter arises from a car accident occurring on April 13, 2006. ECF No. 1. At the time of the accident, Plaintiff maintained an insurance policy issued by Defendant. Id. After Defendant refused to provide coverage under the uninsured or underinsured motorist ("UIM") provision of the policy, Plaintiff sued Defendant to determine the coverage to which Plaintiff was entitled. See id. The matter was resolved by an arbitrator, who concluded that Plaintiff was entitled to the full UIM coverage of $250,000. Id. An interpleader action was subsequently filed to divide the UIM benefits among multiple claimants and Plaintiff. Id.

Plaintiff then brought this suit against Defendant on January 19, 2012, alleging two claims: (1) unfair claims practices in violation of Nevada Revised Statute ("NRS") 686A.310(1)(b), (e), (f), and (n); and (2) bad faith. Id. Both claims were predicated on allegations that Defendant

delayed paying the UIM coverage after the point in time at which Defendant's liability to do so became reasonably clear.

On November 14, 2012, Defendant moved to appoint a guardian *ad litem* based on Plaintiff requiring a guardian in the first suit. ECF No. 21. Plaintiff opposed the motion. ECF No. 24. Magistrate Judge Peggy Leen canvassed Plaintiff on November 20, 2012 and found him to be competent. ECF No. 26. But Judge Leen deferred ruling on the motion after Defendant represented its intent to withdraw the it. Id. Defendant withdrew the motion via a stipulation on November 29, 2012. ECF Nos. 29, 31 (order granting the stipulation). Nearly one year later, Plaintiff moved to appoint a guardian *ad litem*, and Defendant opposed. ECF Nos. 83, 86. Magistrate Judge George Foley, Jr. granted the motion on November 21, 2013. ECF No. 98. Robert Ansara was appointed as the guardian *ad litem* on that same day. ECF No. 99.

After discovery closed on August 7, 2013, Magistrate Judge Foley reopened discovery on Plaintiff's motion for a limited basis. ECF Nos. 51, 98. The Court then overruled Magistrate Foley in part, reopening discovery for a sixty-day period without the same limitations and allowing Plaintiff to take three additional depositions within the new deadline. ECF No. 112.

Plaintiff moved to compel certain documents during the extended discovery period. ECF No. 114. Defendant opposed, asserting that the documents were privileged. ECF No. 131. On April 15, 2015, the Court ordered Defendant to submit the documents to the Court for *in camera* review. ECF No. 133.

After the extended discovery period closed, the parties both moved for summary judgment. ECF Nos. 146, 148, 149. The Court heard oral argument on the motions on February 4, 2016. ECF No. 173. The Court ultimately denied Defendant's motion and granted Plaintiff's motion in part. ECF Nos. 181, 186, 198, 250. The Court granted judgment in favor of Plaintiff on the claim arising under NRS 686A.310(f)—a portion of Plaintiff's claim under Nevada's Unfair Claims Practices Act ("UCPA"). ECF No. 250.

The Court later held a pretrial conference spanning from August 8 to August 11, 2016. ECF Nos. 278, 280, 285. A final pretrial conference was held over April 25, 2017 and May 1, 2017. ECF Nos. 358, 388. A nine-day trial began on May 3, 2017 and ended on May 15, 2017.

ECF Nos. 410, 418. During trial, Defendant moved for judgment as a matter of law. ECF No. 395. The motion was denied as moot once the jury returned a verdict on May 15, 2017, finding in favor of Defendant on both claims. ECF Nos. 409, 418. Judgment was entered on June 1, 2017. ECF No. 419.

Plaintiff now moves for a new trial under Rule 59(a). ECF No. 429. Defendant opposed the motion, and Plaintiff replied. ECF Nos. 438, 442.

Defendant now moves for attorneys' fees based on an offer of judgment extended to and rejected by Plaintiff. ECF No. 423. Plaintiff opposed the motion, and Defendant replied. ECF Nos. 428, 437.

The Court heard oral argument on both pending motions on April 17, 2018. ECF No. 448. The Court then ordered supplemental briefing to address any attorneys' fees incurred by Plaintiff through the litigation and any resolutions offered by Defendant as an alternative to litigation. Id. The parties filed the supplemental briefs on May 17, 2018. ECF Nos. 451, 452.

### III. FACTUAL BACKGROUND

The Court reviews its Summary Judgment Order, the trial testimony and exhibits, and the jury instructions.

#### a. Order Granting Summary Judgment

The Court granted summary judgment in Plaintiff's favor in part prior to trial, finding that Defendant violated NRS 686A.310(1)(f). NRS 686A.310(1)(f) provides:

> Engaging in any of the following activities is considered to be an unfair practice:
> …
> (f) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

In awarding summary judgment in favor of Plaintiff, the Court found that undisputed evidence showed that: Plaintiff demanded the full $250,000 provided for in the UIM coverage; Defendant denied the claim; and Plaintiff received the full policy limit from Defendant following the arbitrator's ruling. The Court also found that Defendant failed to provide any evidence to show it

offered to settle the claim at all, let alone for an amount not substantially less than $250,000. Thus, the Court found that Defendant violated NRS 686A.310(1)(f). But the Court left the determination of damages to the jury.

The Court granted summary judgment only as to subsection f; the Court denied summary judgment as to subsections b, e, and n of Plaintiff's UCPA claim and as to Plaintiff's bad faith claim.

Finally, the Court considered the types of damages that Plaintiff could seek at trial. The Court first ruled that the jury could consider awarding punitive damages for Plaintiff's bad faith claim as well as the UCPA claim in relation to subsections e and f. The Court then ruled that Plaintiff could also recover damages for which Plaintiff could "establish a causal link between [Defendant's] actions with respect to violating the UCPA and the damages he suffered from those actions." ECF No. 250 at 17. While the Court also allowed Plaintiff to seek attorneys' fees under NRS 18.010, it found that the UCPA "does not serve as a separate vehicle for recovery of attorney's fees."

### b. Trial Testimony

Pertinent to the instant Order, four witnesses testified at trial about Plaintiff's attorneys' fees and financial struggles: (1) Matthew Aaron, (2) Marjorie Hauf, (3) Richard Small, and (4) Alfonso Garcia.

Aaron testified that he began representing Plaintiff approximately two weeks after the accident and continued to represent Plaintiff until the end of 2007. He assisted Plaintiff with the processing of third-party claims and the UIM claim. While Plaintiff retained Aaron on a contingent-fee basis, the retainer allowed Aaron to charge an hourly rate if the representation was terminated prior to the resolution of the UIM claim. Thus, after Plaintiff terminated Aaron, Aaron filed a lien for approximately $33,000 for his services. Aaron recovered half of his lien through the interpleader. But Aaron never initiated litigation against Defendant on behalf of Plaintiff.

Hauf testified that she also represented Plaintiff during the time in which Defendant was processing the UIM claim. Plaintiff initially retained Hauf on a contingent-fee basis. However, Plaintiff terminated the representation after only one month. Like the fee agreement between

Aaron and Plaintiff, the fee agreement between Hauf and Plaintiff allowed the fees to transform to an hourly basis. After Plaintiff terminated the representation, Hauf filed a lien and reduced the lien to judgment. Hauf did not file litigation on behalf of Plaintiff. She assisted only with the processing of the UIM claim, requesting by letter both the claim file and the claim evaluation. She recovered half of her fees, approximately $4,000, through the interpleader.

Small represented Plaintiff in the interpleader after arbitration was resolved in Plaintiff's favor. Small testified that he was owed $15,000 for his services. He also testified that multiple attorneys made claims for fees through the interpleader. While the interpleader action resulted in an order settling most claims, the order did not detail the work performed by the claimants, the purpose of the fees, or the time at which the fees were incurred. See Exhibit 91. Small clarified that he did not file any litigation against Defendant on behalf of Plaintiff and did not assist Plaintiff in recovering the UIM benefits; he represented Plaintiff only in regard to the division of the UIM benefits among the multiple claimants.

The fourth witness, Garcia, testified that Plaintiff rented a condominium from him for several years. Prior to the accident, Plaintiff was timely in his payments. But Plaintiff fell approximately ten months behind after the accident, owing Garcia nearly $7,000. Garcia allowed Plaintiff to remain in the condominium despite the late rental payments due to their existing friendship and Plaintiff's circumstances. Garcia also lent Plaintiff additional funds to cover airline tickets and living expenses after the accident and prior to the interpleader.

### c. Jury Instructions

The Court instructed the jury on NRS 686A.310(1)(f) through multiple jury instructions, which read as follows:

> Mr. Young has also brought four separate claims against Mercury for violations of the Nevada Unfair Insurance Practices Act. <u>You are to consider and decide each of these claimed violations separately from each other.</u>
>
> The Nevada Unfair Insurance Practices Act prohibits any person in the insurance business from engaging in activities which constitute an unfair or deceptive act or practice. In order to establish a claim for breach of the Nevada Unfair Insurance Practices Act, plaintiff must prove by a preponderance of the evidence:

1. That defendant violated a provision of the Nevada Unfair Insurance Practices Act; and

2. The violation was a substantial factor in causing plaintiff's damages.

Mr. Young has alleged that Mercury violated the following provisions of the Nevada Unfair Insurance Practices Act:

[…]

4. Subsection (f): Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured, when the insureds have made a claim for amounts reasonably similar to the amounts ultimately recovered;

[…]

<u>You may have different findings for the different subsections. You must consider each of them separately.</u>

Importantly, [t]he Court has already found as a matter of law that Defendant Mercury Casualty Company did violate subsection (f) of the Nevada Unfair Insurance Practices Act because it unlawfully required Mr. Young to file a lawsuit to recover amounts due under his insurance policy by offering him no payment under the policy and where he later collected from Mercury an amount similar to what he claimed from them. For this subsection, you DO NOT have to determine whether Mercury violated this subsection by preponderance of the evidence, because the Court has ALREADY FOUND that Mercury violated this subsection under Nevada law.

Your job with respect to that provision is ONLY to determine what, if any damages, must be awarded for that violation. In so doing[,] you should follow the Court's instructions as to damages.

The Court then instructed the jury on compensatory damages, payment to attorneys as damages, and punitive damages. The instruction regarding payments to attorneys as damages read:

In determining damages for the claims in this case, you may consider and award as damages attorneys' fees paid or owed by Mr. Young that meet the following requirements.

Payments to attorneys constitute damages where they are the natural and proximate cause of the unlawful conduct of the defendant. The Plaintiff has the burden of proving damages by a preponderance of the evidence. You may award payments as damages for each claim, but plaintiff must separately prove the amount of

damages and causation for each claim. You may not award the same payments for multiple claims.

"Proximate cause" means a cause which, in natural, foreseeable, and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred."

Plaintiff is not automatically entitled to damages for payments to attorneys that he retained. He is entitled only to those payments, costs, and fees for attorneys that were made necessary by and proximately caused by any violation of the law by Mercury that you may find.

The Court also provided an instruction to define "preponderance of evidence."

### d. Jury Verdict

The jury found in favor of Defendant entirely. In relation to the portion of the second claim arising under NRS 686A.310(1)(f), the verdict form states:

> The Court has already found as a matter of law that Defendant Mercury Casualty Company did violate subsection (f) of the Nevada Unfair Insurance Practices Act, "compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less tha[n] the amounts ultimately recovered in actions brought by such insureds, when the insureds have made a claim for amounts reasonably similar to the amounts ultimately recovered.
>
> **Compensatory Damages**
> You may award compensatory damages for this claim.
>
> We find that Plaintiff David Young is entitled to compensatory damages against Defendant Mercury Casualty Company in the amount stated: _____.
>
> **Punitive Damages**
> You may not award punitive damages unless you first found against Mercury Casualty Company and have awarded compensatory damages. You may only award punitive damages if you find that the Plaintiff has satisfied the standard for an award of punitive damages.
>
> We find that Plaintiff David Young is entitled to punitive damages against Defendant Mercury Casualty Company in the amount stated: _____.

The jury completed the form by filling in both blank spaces with a zero.


## IV. MOTION FOR NEW TRIAL

To begin, the Court turns to Plaintiff's Motion for a New Trial.

**a. Legal Standard**

Rule 59 allows a district court to "grant a [party's motion for a] new trial on all or some of the issues … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). Rule 59 also allows a district court to grant a new trial on its own initiative "for any reason that would justify granting one on a party's motion." Fed. R. Civ. P. 59(d). But the district court must first give the parties notice and an opportunity to be heard if granting a new trial for a reason not stated in the moving party's motion. Id. The district court must specify the reasons for granting a new trial in its order. Id.

"Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd, 762 F.3d 829, 842 (9th Cir. 2014). The Ninth Circuit recognizes the following grounds on which a new trial may be granted: "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007). In ruling on a Rule 59 motion, a district court may "weigh the evidence and assess the credibility of witnesses[.]" Kode v. Carlson, 596 F.3d 608, 612 (9th Cir. 2010). The district court is "not required to draw all inferences in favor of the verdict and [can] reweigh the evidence and make credibility determinations." Experience Hendrix L.L.C., 762 F.3d at 845.

**b. Discussion**

Plaintiff asserts three grounds to argue for a new trial: (1) an inconsistent or mistaken jury verdict; (2) the absence of a guardian *ad litem* for a portion of the litigation; and (3) prejudice resulting from late disclosures and time restraints imposed during trial. The Court addresses each ground in turn.

i. Jury Verdict

In his first argument for a new trial, Plaintiff focuses on the jury's verdict in relation to the Summary Judgment Order and the jury instructions. Plaintiff first contends that the verdict is "inconsistent" and later claims the verdict a "clear mistake that goes against the clear weight of

the evidence." The Court first considers if the jury rendered an inconsistent verdict and then if the verdict contradicts the clear weight of the evidence.

### 1. *Inconsistency*

Defendant argues that Plaintiff waived his right to contest the jury verdict as inconsistent by failing to challenge the verdict before the jury was discharged as required by Rule 49(b). However, Rule 49(b) applies only to special verdicts. The jury rendered general verdicts in this matter; no factual findings were made on the verdict form. See Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (explaining the differences between general verdicts and special verdicts, the latter of which requires factual findings). Rule 49(b) is therefore inapplicable.

Further, while Plaintiff titles his argument as one falling under the theory of inconsistent verdicts, Plaintiff does not challenge the inconsistency of two general verdicts in substance. He instead complains that the failure to award damages for a violation of NRS 686A.310(1)(f) is inconsistent with the Summary Judgment Order and the jury instruction, both of which explicitly state that Defendant violated NRS 686A.310(1)(f). The argument thus concerns the verdict in relation to the weight of the evidence rather than the inconsistency of two general verdicts.

However, to the extent that Plaintiff intends to challenge the verdicts as inconsistent, the argument is foreclosed. The Ninth Circuit has applied the doctrine of waiver in the context of general verdicts in a similar manner to that of the application of the waiver doctrine under Rule 49, holding that "[a] party waives its objection to the jury's [general] verdict by not objecting to the alleged inconsistency prior to the dismissal of the jury." Williams v. Gaye, 895 F.3d 1106, 1130 (9th Cir. 2018). The Court therefore finds that Plaintiff waived his right to object to the inconsistency of the verdicts by failing to raise the argument before the jury was discharged.

### 2. *Clear Mistake or Clear Weight of the Evidence*

The Court now turns to Plaintiff's contention that the verdict constitutes a clear mistake that is contrary to the clear weight of the evidence. Plaintiff argues that damages should have been awarded on the claim under NRS 686A.310(1)(f) since the Court found Defendant violated the subsection by compelling the insured to bring suit to recover the UIM benefits. Plaintiff contends that the evidence shows he incurred attorneys' fees and costs as well as loans for living expenses.

1  Plaintiff then conclusory states that he "clearly" showed the monetary damages were a direct result
2  of Defendant's compelling Plaintiff to file multiple lawsuits. The Court disagrees.

3  When a jury verdict is challenged as contradicting the clear weight of the evidence, a
4  "district court has the duty to weigh the evidence as the court saw it, and to set aside the verdict of
5  the jury, even though supported by substantial evidence, where, in the court's conscientious
6  opinion, the verdict is contrary to the clear weight of the evidence." Molski, 481 F.3d at 729
7  (internal punctuation and citation omitted). In conducting its review of the evidence, the Court
8  recognizes that Plaintiff provided evidence of attorneys' fees and other costs incurred between the
9  time of the accident and the time of the arbitrator's decision that Plaintiff was entitled to the UIM
10 benefits. But this evidence alone does not show that the Plaintiff was entitled to damages. As
11 explicitly explained in both the Summary Judgment Order and the jury instructions, Plaintiff could
12 only recover damages proven to be proximately caused by Defendant's violative conduct. The
13 evidence to which Plaintiff points relates to services that were not necessarily linked to Defendant
14 compelling Plaintiff to file suit; the services instead could relate to services provided to assist
15 Plaintiff in processing his insurance claim with Defendant rather than litigating to recover benefits
16 to which he was entitled. To state differently, Plaintiff failed to establish the causal link between
17 the evidence and the violative conduct to a degree that would render the verdict as contrary to the
18 weight of evidence. He, in fact, failed to describe in any detail the fees charged by the counsel
19 that ultimately filed suit on his behalf.

20 Plaintiff now attaches exhibits to show the costs of the underlying suits to his post-trial
21 briefs. But Plaintiff's attempt to prove damages caused by Defendant's violative conduct is
22 belated. The same exhibits were never presented to the jury, and Plaintiff cannot rectify the error
23 by providing the evidence in post-trial briefing. Indeed, Plaintiff fails to identify any trial exhibit
24 containing information related to the costs of the lawsuits. Plaintiff instead points to the trial
25 testimony concerning expenses incurred during the processing of the insurance claim and the
26 interpleader action. The Court thus cannot find that the jury issued a verdict contrary to the clear
27 weight of the evidence *that was presented to the jury*.
28 / / /

The Court is not persuaded by Plaintiff's speculation that the jury withheld the award of damages after questioning if the award would be depleted by the multiple attorney's liens. While Plaintiff's theory is possible, "[d]oubts about the correctness of the verdict are not sufficient grounds for a new trial: the trial court must have a firm conviction that the jury has made a mistake." Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1372 (9th Cir. 1987). Thus, while Plaintiff provided evidence that could have allowed the jury to rule in his favor, the Court finds that the trial evidence did not clearly require such a verdict. The Court denies Plaintiff's first ground for a new trial accordingly.

### ii. Guardian *Ad Litem*

Next, Plaintiff contends that the entire litigation should be nullified under Rule 17 (and the analogous state rule). Plaintiff argues that the trial evidence establishes that he suffered a closed head injury as a result of the car accident. He claims that the injury rendered him incompetent under Rule 17. Plaintiff then concludes that his incompetency requires a new trial since he was unrepresented by either an attorney or a guardian *ad litem* during the processing of his UIM claim (February 2008 to August 2009) and during portions of this litigation (June 2013 to August 2013).

Rule 17 requires a court to "appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2). While a district court must consider if a person is adequately protected in accordance with Rule 17, "the court has broad discretion and need not appoint a guardian ad litem if it determines the person is or can be otherwise adequately protected[.]" United States v. 30.64 Acres of Land, More or Less, situated in Klickitat Cty., State of Wash., 795 F.2d 796, 805 (9th Cir. 1986).

The procedural history of this matter indicates that Rule 17 was satisfied throughout the litigation. Defendant first moved to appoint a guardian *ad litem* on Plaintiff's behalf shortly after litigation was initiated. After Plaintiff opposed the motion, Magistrate Judge Leen canvassed Plaintiff at a hearing and ultimately opined that Plaintiff "is articulate, intelligent, and understand [this litigation currently]." Thus, a guardian *ad litem* was not appointed only after the Court considered if Plaintiff's interests were adequately protected without the appointment of a guardian *ad litem* under Rule 17.

When Plaintiff moved to appoint a guardian *ad litem* nearly a year later, the issue was reconsidered by Magistrate Judge Foley. Judge Foley decided to appoint a guardian *ad litem* based on the request coming from Plaintiff and, apparently, out of caution. In making his determination, Judge Foley emphasized that Judge Leen's earlier decision was not in error. Judge Foley then reopened discovery for Plaintiff additional opportunity to obtain discovery with assistance from both counsel and a guardian *ad litem*.

Plaintiff argues that proceeding without counsel and without a guardian *ad litem* during the discovery period resulted in prejudice. The procedural history of this matter shows otherwise. Multiple judges considered the issue of appointing a guardian *ad litem* on behalf of Plaintiff when the issue arose and a guardian *ad litem* was appointed once Plaintiff believed a guardian became necessary. Further, to ensure Plaintiff obtained any discovery not acquired during the time he went unrepresented, the discovery period was reopened. The reopening of discovery therefore allowed Plaintiff to act with the assistance of counsel and of a guardian *ad litem*. Given the extended discovery period and the appointment of a guardian *ad litem* on Plaintiff's request, the Court finds Plaintiff's interest were adequately protected as contemplated by Rule 17. Indeed, Plaintiff conducted additional discovery. Plaintiff fails to show how his interests were not adequately protected as required by Rule 17 or how the litigation would have concluded differently if a guardian *ad litem* had been appointed earlier over Plaintiff's objection.[1] Indeed, the difficulties that Plaintiff experienced during the insurance investigation, *e.g.* delayed production of Dr. Dix's assessment, was presented to and considered by the jury during trial. The Court therefore finds that Plaintiff has not demonstrated how the absence of a guardian *ad litem* during the relevant time periods in this matter resulted in a miscarriage of justice and denies Plaintiff's motion on the second proposed ground.

### iii. Prejudice by Late Disclosure and Time Restraints

---

[1] Defendant argues that the invited error doctrine bars Plaintiff from seeking a new trial based on the lack of a guardian ad litem for a portion of the litigation since Plaintiff opposed the appointment of a guardian ad litem previously. See Deland v. Old Republic Life Ins. Co., 758 F.2d 1331, 1336 (9th Cir. 1985) (recognizing that "[o]ne who by his conduct induces the commission of some error by the trial court, or, in other words, who has invited error, is estopped from insisting that the action of the court is erroneous."). The Court declines to consider if the invited error doctrine should extend to contexts involving Rule 17.

Plaintiff finally argues that he was prejudiced both by the late disclosure of Defendant's documents previously withheld as privileged material and by the limited time allowed for the direct examination of Jeffrey Lipp. The Court finds that neither circumstance prejudiced Plaintiff in a manner justifying a new trial.

As to the disclosure of documents at trial, after the Court disclosed the documents to Plaintiff's counsel and stated that it expected counsel to review the documents prior to questioning the relevant witnesses, Plaintiff's counsel stated: "We'll be prepared." The timing of the disclosure was not made an issue until Defendant's counsel objected to the timing on the basis of prejudice. And when the Court offered to break for the parties to have some additional time to review the documents, Plaintiff's counsel offered no opinion on the matter. The Court therefore gave the parties additional time to review and prepare the documents in response to a request from Defendant's counsel only. Based on Plaintiff's failure to raise the issue during trial and for the other reasons noted, the Court finds that Plaintiff's argument does not justify awarding a new trial.

The Court also finds that the time restraints placed on the parties when questioning Jeffrey Lipp do not justify granting a new trial. Plaintiff complains that Lipp "was difficult, somewhat arrogant, and non-responsive with his answers, and he gratuitously added commentary after the questions were asked." Plaintiff also asserts that Lipp played a crucial role in delaying and then ultimately denying Plaintiff's UIM claim. Plaintiff finally argues that the time restraint caused him prejudice when additional questions could not be asked, claiming the Court "instructed [Plaintiff's counsel] counsel to 'sit down'" at the expiration of the allotted time.

The Court imposed the time restraint under its discretionary authority to manage the nine-day trial. "Trial courts have broad authority to impose reasonable time limits. Such limits are useful to prevent undue delay, waste of time, or needless presentation of cumulative evidence." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002) (internal quotation marks and citations omitted). The Court imposed the time restraint after conferring with the parties. No objection was made. Additionally, prior to the allotted time expiring, the Court warned Plaintiff's counsel that only two more questions could be asked. Plaintiff's counsel asked three. The following colloquy between the Court and Plaintiff's counsel ensued:

| | | |
|---|---|---|
| THE COURT: | | Thank you, Ms. Johnston. |
| PLAINTIFF'S COUNSEL: | | May I show him… |
| THE COURT: | | No, Ms. Johnston. Your time is up as relates to this particular witness. Thank you. |
| PLAINTIFF'S COUNSEL: | | Well, I have… |
| THE COURT: | | Ms. Johnston. |
| PLAINTIFF'S COUNSEL: | | Honestly, Judge, I have two more… |
| THE COURT: | | I understand that. I've ruled, Ms. Johnston. We're going to pass the witness to Mr. Carman. |
| PLAINTIFF'S COUNSEL: | | I didn't even have five minutes, Judge. |
| THE COURT: | | Ms. Johnston, I've ruled on this. Go ahead, Mr. Carman. |

Contrary to Plaintiff's representations, Plaintiff's counsel was not "instructed to 'sit down[.]'"

In addition to the Court warning Plaintiff of the time restraints multiple times, Plaintiff fails to point to any information that was not heard during trial as a result of the time restraint. The jury was made aware of the alleged delays and the alleged misconduct centering on the production of medical examinations and the multiple reports from an accident reconstructionist by way of other witnesses and trial exhibits. Thus, the evidence Plaintiff outlines in his motion would have been redundant of testimony provided by other witnesses such as Tony Stoll and Marjorie Hauf, and redundant of information from admitted exhibits such as the report from the accident reconstructionist. Because Plaintiff fails to identify any prejudice resulting from the time constraints and because the Court exercised its discretion in managing the trial by imposing the time constraints only after discussion with the parties, the Court finds the time constraints do not justify awarding Plaintiff a new trial. The Court therefore denies Plaintiff's motion accordingly.

## V. MOTION FOR ATTORNEYS' FEES

The Court now turns to Defendant's Motion for Attorneys' Fees. Defendant extended Plaintiff an offer of judgment for $350,000 on July 27, 2016. Plaintiff declined the offer, and the trial followed. Now that the jury has returned a verdict completely in favor of Defendant, Defendant seeks to recoup the $179,281.25 it incurred after extending the offer of judgment.

### a. Legal Standard

"In an action involving state law claims, [federal courts] apply the law of the forum state

to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule." MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co., 197 F.3d 1276, 1282 (9th Cir. 1999). "Rule 54 provides a federal procedural mechanism for moving for attorneys' fees that are due under state law." Cheffins v. Stewart, 825 F.3d 588, 597 (9th Cir. 2016). Under Rule 54, a party may move for attorneys' fees but must "specify the judgment and the statute, rule or other grounds entitling the movant to the award[.]" Fed. R. Civ. P. 54(a), (d)(2).

The Ninth Circuit has recognized that Nevada law permits a party to "recover attorneys' fees if an offer of judgment is rejected." Cheffins, 825 F.3d at 597; see also Nev. R. Civ. P. 68. Thus, while a party must follow Rule 68 when making an offer of judgment to an opposing party in a federal matter, the Court must apply Nevada law to determine if an award of attorneys' fees is warranted. MRO Commc'ns, Inc., 197 F.3d at 1282–83; see also Fed. R. Civ. P. 68 (governing the procedure in making offers of judgment).

Under Nevada law, an award for attorneys' fees is permitted if a party rejects an offer of judgment and fails to obtain a greater recovery at trial. Nev. R. Civ. P. 68. A court must consider four factors to determine if attorneys' fees should be recovered under Nevada law: whether (1) the plaintiff brought the claims in good faith; (2) the defendant's offer of judgment was reasonable and made in good faith; (3) the plaintiff's rejection of the offer was "grossly unreasonable or in bad faith;" and (4) the fees sought are reasonable and justified. Beattie v. Thomas, 668 P.2d 268, 274 (Nev. 1983). If the four factors weigh in favor of the party seeking attorneys' fees, the court may award the fees in its discretion. Id.

**b. Discussion**

The Court finds that the award of attorneys' fees in this action is not merited after considering the four factors outlined in Beattie. Although it appears Defendant made the offer in good faith and seeks a reasonable amount in attorneys' fees given the procedural history of this case, the Court finds that Plaintiff did not act in bad faith or grossly unreasonable when bringing the claims nor when rejecting the offer of judgment.

First, the Court finds Plaintiff did not bring the claims in bad faith because the issues in this matter were clearly contentious and had some merit. Plaintiff fought for the UIM benefits for

nearly six years before bringing suit. Plaintiff was then victorious on two occasions: when (1) the arbitrator awarded the full benefits of the UIM coverage to Plaintiff and (2) the Court granted Plaintiff summary judgment on the issue of liability under NRS 686A.310(1)(f). Plaintiff's victories show that the claims had some merit and were therefore not brought in bad faith despite Plaintiff failing to establish damages before the jury. Based on the long, contentious history of this matter and Plaintiff's victories in establishing liability, the Court finds that Plaintiff did not act in bad faith when bringing his claims.

Second, the Court cannot find that Plaintiff's rejection of the offer of judgment was either grossly unreasonable or in bad faith when viewing the amount offered in conjunction with the policy limits, the claimed damages, and the potential for punitive damages. The Court finds that the value of a potential verdict in Plaintiff's favor could have substantially exceeded the offer. Moreover, it appears that Plaintiff had been advised by various prior counsel that the value of his claim exceeded the offer. This advice, in addition to other factors noted, supports this Court's finding that Plaintiff's rejection of the offer was not made in bad faith. The Court therefore finds that the Beattie factors do not require an award of attorneys' fees and denies Defendant's motion accordingly.

## VI. CONCLUSION

**IT IS ORDERED** that Plaintiff David Brigham Young's Motion for a New Trial (ECF No. 429) is DENIED.

**IT IS FURTHER ORDERED** that Defendant Mercury Casualty Company's Motion for Attorneys' Fees (ECF No 423) is DENIED.

DATED: May 20, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**